PAUCATUCK EASTERN PEQUOT INDIANS OF CONNECTICUT ET AL. *v.* CONNECTICUT INDIAN AFFAIRS COUNCIL ET AL.
(6292)

BORDEN, SPALLONE and DALY, Js.

Argued January 17—decision released March 28, 1989

*William H. Hescock,* for the appellants (plaintiffs).

*Ann-Marie DeGraffenreidt,* assistant attorney general, with whom were *Robert B. Teitelman* and *Henry S. Cohn,* assistant attorneys general, and, on the brief, *Clarine Nardi Riddle,* acting attorney general, *Joseph I. Lieberman,* former attorney general, and *Robert E. Walsh,* assistant attorney general, for the appellee (named defendant).

*William S. Bingham,* for the appellees (defendant Eastern Pequot Indians et al.).

DALY, J. The plaintiffs appeal to this court from the judgment of the trial court dismissing their appeal from the decision of the named defendant, the Connecticut Indian Affairs Council (CIAC). The trial court dismissed the plaintiffs' administrative appeal on the ground that they were not aggrieved and therefore lacked standing to pursue that appeal. We find error and hold that the plaintiffs have standing to appeal.

Certain facts are relevant to the disposition of this appeal. The plaintiffs include (1) the Paucatuck Pequot Indians of Connecticut,[1] (2) Helen LeGault, Ruth Geer and Raymond Geer, members of that tribe, and (3) Richard Williams, a tribal member and the tribal representative on the CIAC prior to the December 3, 1983 CIAC decision that is the subject of the plaintiffs' administrative appeal. The defendants include (1) the CIAC,[2] (2) Stilson Sands, chairman of the CIAC at the time of the decision, (3) the Eastern Pequot Indians of Connecticut,[3] and (4) Royal Sebastian, William Sebastian and Lawrence Sebastian, tribal members of the Eastern Pequot. There are five Indian tribes recognized in Connecticut, namely, the Schaghticoke, the Paucatuck Pequot, the Mashantucket Pequot, the Mohegan and the Golden Hill Paugusset and each is entitled to one representative on the CIAC. General Statutes § 47-59a, 47-59b (a).

On December 7, 1982, the individual defendants and the Eastern Pequot challenged Williams' tribal representation on the CIAC, pursuant to the regulations of the department of environmental protection, §§ 47-59b-5 and 47-59b-6 of the Regulations of Connecticut State Agencies.[4] Adjudicatory hearings were held and, on

---

[1] Although the named plaintiff has been referred to as the Paucatuck Eastern Pequot Indians of Connecticut, we will use the statutory designation Paucatuck Pequot. General Statutes § 47-59b (a). The named plaintiff is one faction of the tribe and the individual plaintiffs claim to be the true members.

[2] CIAC is an appellee to this action, but now agrees with the appellants that they have standing to pursue the administrative appeal.

[3] The Eastern Pequot is a second faction of the tribe, the members of which claim to be the true tribal members.

[4] Regs., Conn. State Agencies § 47-59b-5 provides: "Each tribal organization seeking representation on the Council shall file a description of the organization, its membership, and the procedure for selecting a representative to the Council. Prior to being seated, the tribal representative shall file with the Council a certificate of the appropriate tribal official stating that the representative was duly selected in accordance with tribal prac-

December 3, 1983, the CIAC issued its decision. The CIAC found that, at the time of the challenge, there was no prevailing practice and usage concerning the determination of membership in the tribe, nor did the tribe have any practice or usage on file with the CIAC, as required by § 47-59b-5 of the regulations. The CIAC found it necessary to determine the eligibility and eligibility criteria for membership in the tribe, due to the absence of any tribal practice and usage for determining membership.[5] The CIAC also declared the tribal

tice and usage. If satisfied that the tribal organization is representative of the tribe, and that the tribe's representative to the Council has been properly selected in compliance with the practice and usage of the tribe, the Council shall seat the tribal representative."

Regs., Conn. State Agencies § 47-59b-6 provides: "At the time a representative of a tribal organization requests to be seated at the Council, or any time thereafter, a member of the tribe for which the representative was selected, or any person aggrieved by an action of this Council, may challenge the authority of the tribal organization seeking to be seated to represent the tribe, or the validity of the process by which the representative of the tribe was selected. Upon receipt of such a challenge, the Council shall set a date for a hearing to be held and conducted in the same manner as hearings on contested applications for recognition of Indian status under these regulations. No representative shall take part in proceedings of the Council while under challenge. The burden of proof shall be on the challenger. If the Council determines that the tribal organization represents the tribe and that the challenged representative has been properly selected by the tribal organization, the Council will not entertain further challenges to the tribal organization or its representative except on a showing of substantial evidence different from that heard by the Council at the first challenge hearing. The burden shall be upon the challenging party to show, by affidavit or document any evidence, that new evidence warrants a hearing on any subsequent challenge.

"The Commissioner of Environmental Protection may, and in the event that more than one member are challenged simultaneously shall, designate one or more additional persons, who shall be Indians within the meaning of Sections 47-59a to 47-66 of the General Statutes, as amended, and not members of the tribal organization under challenge, to sit on the Council for purposes of hearing and determining the challenges. The panel shall consist of not less than seven persons, including the Council members whose credentials have not been challenged."

[5] The CIAC expanded the statutory definition of Indian, with respect to the Paucatuck Pequot, to include consideration of additional factors such as (1) clear evidence that an individual or individual's family has been histor-

seat on the council vacant until such time as a new tribal government was declared and the necessary documents were submitted to the CIAC.

The plaintiffs appealed this administrative decision to the Superior Court, pursuant to General Statutes § 4-183. The court conducted a hearing on aggrievement, at which Raymond Geer was the only witness. On the basis of its finding that none of the plaintiffs was aggrieved, the court dismissed their appeal. The question for our review is whether the tribal organization and the individual plaintiffs have been aggrieved by the CIAC decision, thereby conferring upon them standing to appeal that decision.

" ' "The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, 'the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision.' . . ." ' *Cannavo Enterprises, Inc.* v. *Burns,* 194 Conn. 43, 47, 478 A.2d 601 (1984); *Bakelaar* v. *West Haven,* 193 Conn. 59, 65, 475 A.2d 283 (1984). 'Aggrievement is established if "there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." *O'Leary* v. *McGuinness,* 140 Conn. 80, 83, 98 A.2d 660 (1953).' *Hall* v. *Planning Commission,* 181 Conn. 442, 445, 435 A.2d 975 (1980)." *State Medical Society* v.

---

ically recognized and accepted as a member of the tribe, (2) percentage of tribal blood that is Paucatuck Pequot, and (3) percentage of Indian blood of another tribe that has or had an historical relationship with the Paucatuck Pequot.

*Board of Examiners in Podiatry,* 203 Conn. 295, 299–300, 524 A.2d 636 (1987).

The CIAC specifically ruled that it would "recognize as legitimate and eligible tribal members, any individual who presents adequate evidence that he [or] she is eligible within either the [s]tate statutes or the above criteria[6] to be recognized as a member of the [Pauca-tuck Pequot] tribe." The individual plaintiffs had already achieved tribal member status prior to the CIAC decision. As a result of the decision, they are required to reapply to the CIAC for a new determination of such status. The CIAC decision stripped the individual plaintiffs of their tribal member status. Thus, the individual plaintiffs have satisfied the test for determining aggrievement because they have shown that there is a possibility that a legally protected interest, namely, tribal member status, has been adversely affected by the CIAC's decision.

The remaining issue is whether the trial court erred when it determined that the named plaintiff was not aggrieved. The United States Supreme Court has recognized two instances in which an organization has standing to sue. First, an organization has standing to sue in its own right if the associational ties of its members are injured. *Warth* v. *Seldin,* 422 U.S. 490, 510–11, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). Additionally, an organization has standing to sue on behalf of its injured members, even in the absence of injury to the organization itself. Id., 511; see *Hunt* v. *Washington State Apple Advertising Commission,* 432 U.S. 333, 343, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977). An organization may assert both types of standing within the same action. *Warth* v. *Seldin,* supra, 511.

---

[6] See footnote 5, *supra.*

In *Connecticut Assn. of Health Care Facilities* v. *Worrell,* 199 Conn. 609, 508 A.2d 743 (1986), our Supreme Court adopted the federal standard for representational[7] standing as delineated by the United States Supreme Court in *Hunt* v. *Washington State Apple Advertising Commission,* supra. " '[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.' Id., 343 . . . ." *Connecticut Assn. of Health Care Facilities* v. *Worrell,* supra, 616; see *State Medical Society* v. *Board of Examiners in Podiatry,* supra, 304.

The plaintiff Paucatuck Pequot easily satisfies two of the three requirements for representational standing. It has been established in the first part of this opinion that the individual plaintiffs have standing in their own right to appeal the CIAC decision. The third requirement also has been met, because the named plaintiff does not seek money damages. See *State Medical Society* v. *Board of Examiners in Podiatry,* supra, 305. Rather, the remedy sought is a finding by the trial court that the CIAC decision is erroneous. This prayer for relief does not require the court to consider the individual circumstances of any aggrieved tribal member. The named plaintiff can litigate this case without the participation of the individual tribal members and still ensure that "the remedy, if granted, will inure to the benefit of those members of the association actually

[7] Our Supreme Court has referred to the standing of an association to bring suit on behalf of its members as both "association standing"; *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell,* 199 Conn. 609, 614, 508 A.2d 743 (1986); and as "representational standing." *State Medical Society* v. *Board of Examiners in Podiatry,* 203 Conn. 295, 304, 524 A.2d 636 (1987). We adopt the latter term.

injured." *Warth* v. *Seldin,* supra, 515. The representational standing issue in this case turns on the second requirement of *Hunt,* the germaneness prong.

In *Humane Society of the United States* v. *Hodel,* 840 F.2d 45, 53 (D.C. Cir. 1988), the court examined the function and rigor of the germaneness test. In doing so, the court noted that "the parameters of germaneness [had] never been explored in meaningful detail by either the Supreme Court or by any federal circuit court." Id., 54. In *Humane Society,* the District Court had held that the germaneness prong had not been met because the purpose of the litigation was not central to the purpose of the organization. The court of appeals examined the Supreme Court decisions in *Hunt* v. *Washington State Apple Advertising Commission,* supra, and *United Automobile Workers* v. *Brock,* 477 U.S. 274, 106 S. Ct. 2523, 91 L. Ed. 2d 228 (1986), and concluded that "it is highly unlikely the second prong of germaneness was meant to set the narrow perimeter of centrality of purpose . . . . Rather, it would seem to require only that an organization's litigation goals be pertinent to its special expertise and the grounds that bring its membership together." *Humane Society of the United States* v. *Hodel,* supra, 56. Thus, the court characterized the germaneness prong as one mandating mere pertinence between litigation subject and organizational purpose. Id., 58. We find this reasoning persuasive and, accordingly, adopt it for our analysis of germaneness in this case.

An Indian tribe is unlike other associations because a tribe does not have a stated organizational purpose. Cf. *State Medical Society* v. *Board of Examiners in Podiatry,* supra (wherein the court noted the stated organizational purposes of the medical society as set forth in the society's bylaws). A tribe, however, enjoys a unique status under our state and federal law that allows it to protect and preserve its cultural heritage.

The United States Supreme Court has repeatedly stressed that "Indian tribes are unique aggregations possessing attributes of sovereignty over both their members and their territory . . . they are 'a separate people' possessing 'the power of regulating their internal and social relations . . . .' " (Citation omitted.) *United States* v. *Mazurie,* 419 U.S. 544, 557, 95 S. Ct. 710, 42 L. Ed. 2d 706 (1975), quoting *United States* v. *Kagama,* 118 U.S. 375, 381–82, 6 S. Ct. 1109, 30 L. Ed. 228 (1886); *Mescalero Apache Tribe* v. *State of New Mexico,* 630 F.2d 724, 729 (10th Cir. 1980); see also *Mashantucket Pequot Tribe* v. *McGuigan,* 626 F. Supp. 245, 247 (D. Conn. 1986). Moreover, one of the basic powers of an Indian tribe is the right to determine tribal membership. *Cherokee Intermarriage Cases,* 203 U.S. 76, 94, 27 S. Ct. 29, 51 L. Ed. 96 (1906); *Roff* v. *Burney,* 168 U.S. 218, 222, 18 S. Ct. 60, 42 L. Ed. 442 (1897); see Regs., Conn. State Agencies § 47-59b-21.[8]

In light of the foregoing, we have little difficulty concluding that a suit challenging the CIAC decision that stripped the tribe of its status as members, as well as its seat on the council, is germane to the tribe's "purposes." If, as the defendants argue, the tribal government and its members are not aggrieved and do not have standing to appeal the decision depriving them of their status and representation, it is unclear exactly who would have standing to appeal such a decision. Our Supreme Court has noted that it will not use standing

---

[8] Regs., Conn. State Agencies § 47-59b-21 provides in part: "Membership determinations shall be made in accordance with the practice and usage of the tribe in which membership is claimed, and . . . persons whose names appear on the tribal rolls of the following tribes shall be considered Indians for purposes of Section 47-59a to 47-66 of the General Statutes, as amended.

"[Paucatuck] Pequot

"[Mashantucket] Pequot

"Schaghticoke

"Golden Hill

"Mohegan."

to permit the erection of "an impenetrable barrier to any judicial scrutiny of the legality of the [action] . . . ." *Highgate Condominium Assn.* v. *Watertown Fire District,* 210 Conn. 6, 16, 553 A.2d 1126 (1989). Neither will this court.

There is error, the judgment is set aside and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.