CONNECTICUT BUSINESS AND INDUSTRY ASSOCIATION, INC., ET AL. *v.* COMMISSION ON HOSPITALS AND HEALTH CARE ET AL.
(14169)

GLASS, BORDEN, F. X. HENNESSY, SPALLONE and LAVERY, Js.

Argued February 14—decision released April 16, 1991

*Brian J. Donnell,* with whom was *Harris B. Appelman,* for the appellants (plaintiffs).

*Maite Barainca,* assistant attorney general, and *William J. Doyle,* with whom were *Maureen Weaver, David Levett, Ellen S. Aho, Michael Kurs, Theodore M. Space, Richard A. O'Connor, Michael S. McKenna, H. Kennedy Hudner, Charles W. Peterson, Stephen E. Ronai, Paul E. Knag* and, on the brief, *Clarine Nardi Riddle,* then attorney general, *Richard J. Lynch* and *Thomas J. Ring,* assistant attorneys general, *J. Michael Eisner, Elliott B. Pollack, Paul D. Sanson, Jeffrey B. Sienkiewicz* and *Frank W. Murphy,* for the appellees (defendants).

GLASS, J. In this appeal, the plaintiffs claim that the trial court improperly dismissed their action for a declaratory judgment under General Statutes §§ 4-175, 4-176 and 52-29 (a)[1] for failure to exhaust available

---

[1] "[General Statutes (Rev. to 1989)] Sec. 4-175. DECLARATORY JUDGMENT ACTION TO DETERMINE VALIDITY OR APPLICABILITY OF A REGULATION OR ORDER. The validity or applicability of a regulation or order of an agency

administrative remedies. We affirm the judgment of dismissal on the ground that the plaintiffs lacked standing to bring the action, and therefore, we do not reach the exhaustion issue.

The plaintiffs are the Connecticut Business and Industry Association, Inc. (CBIA), which represents employers who provide health insurance to their employees, Blue Cross and Blue Shield of Connecticut, Inc. (BCBS), an insurer that provides health insurance to those insured under the policies it has issued, and

may be determined in an action for declaratory judgment brought in the superior court for the judicial district of Hartford-New Britain, if the regulation or order, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff. The agency shall be made a party to the action. A declaratory judgment may not be rendered unless the plaintiff has requested the agency to pass upon the validity or applicability of the regulation or order in question, pursuant to section 4-176, and the agency has either so acted or has declined to exercise its discretion thereunder."

This statute was amended, effective July 1, 1989, by Public Acts 1988, No. 88-317, §§ 9, 107.

"[General Statutes (Rev. to 1989)] Sec. 4-176. DECLARATORY RULINGS. Each agency may, in its discretion, issue declaratory rulings as to the applicability of any statutory provision or of any regulation or order of the agency, and each agency shall provide by regulation for the filing and prompt disposition of petitions seeking such rulings. If the agency issues an adverse ruling, the remedy for an aggrieved person shall be an action for declaratory judgment under section 4-175 unless the agency conducted a hearing pursuant to sections 4-177 and 4-178 for the purpose of finding facts as a basis for such ruling, in which case the remedy for an aggrieved person shall be an appeal pursuant to section 4-183. If the agency fails to exercise its discretion to issue such a ruling, such failure shall be deemed a sufficient request by the plaintiff for the purposes of section 4-175. Rulings disposing of petitions have the same status as agency decisions or orders in contested cases."

This statute was amended, effective July 1, 1989, by Public Acts 1988, No. 88-317, §§ 10, 107.

"[General Statutes] Sec. 52-29. SUPERIOR COURT MAY DECLARE RIGHTS AND LEGAL RELATIONS. (a) The superior court in any action or proceeding may declare rights and other legal relations on request for such a declaration, whether or not further relief is or could be claimed. The declaration shall have the force of a final judgment."

the Insurance Association of Connecticut (IAC), a trade association whose members are domestic insurers that provide health insurance to their policy holders. The defendants are the commission on hospitals and health care (CHHC), and thirty-two Connecticut hospitals.

In August and September, 1988, CHHC issued orders establishing the rates to be charged by the hospitals during the 1989 fiscal year.[2] These rates were established in accordance with formulae set forth in the statutes and regulations as applied to the data concerning its past financial operations that each hospital is required to submit to CHHC in order to implement the prospective payment system adopted in 1984 for hospitals in this state. *Connecticut Business & Industry Assn., Inc.* v. *Commission on Hospitals & Health Care,* 214 Conn. 726, 728, 573 A.2d 736 (1990) (*CBIA I*); see General Statutes (Rev. to 1989) §§ 19a-165 through 19a-165v. Each hospital subsequently filed a request for reconsideration of its rate orders as provided for under § 19a-165q-45 (b)[3] of the Regulations of Connect-

---

[2] The 1989 fiscal year covered October 1, 1988, through September 30, 1989.

[3] Section 19a-165q-45 (b) of the Regulations of Connecticut State Agencies provides: "A hospital may request, within 10 calendar days of issuance of a rate order or within 10 calendar days of modification or denial for items (3) and (4), below, that the commission hold a hearing concerning those items in the rate order as follows:

"(1) Items which were modified or denied by the commission and which were determined pursuant to a provision in the regulations which provides for the hospital to request that an item be considered in determination of the rate order and for the commission to approve, modify or deny such request; or,

"(2) Items which were determined pursuant to a provision in the regulations which specifically provides for the commission to approve, modify or deny an amount provided to the commission by the hospital, except items specified in (3), below, or

"(3) Items modified or denied pursuant to section 19a-165q-32 (b) (4) of these regulations.

"(4) Modifications to a hospital's rate order by the commission, pursuant to section 19a-165q-28 (b) (6) and (7), of these regulations.

icut State Agencies. The CHHC granted the requests, opened dockets for all of the hospitals and scheduled public reconsideration hearings for each matter to be held in October, 1988. In addition, CHHC notified the hospitals that it had "scheduled a time to informally discuss each hospital's . . . rate order should your hospital feel it is necessary." The informal discussions were held at the hospitals' requests throughout September, 1988.

On September 30, and October 3, 1988, BCBS filed petitions pursuant to § 19a-165q-45 (b) (4)[4] of the Regulations of Connecticut State Agencies for party status in the reconsideration hearings scheduled for six of the hospitals, and CBIA and IAC filed letters requesting "blanket" party status in the hearings scheduled for all of the hospitals. In the meantime, however, the informal discussions had resulted in "agreed settlements" between all of the hospitals and CHHC, which revised the original rate orders by increasing them. On October 6, 1988, CHHC temporarily stayed the original rate orders and implemented the revised rate orders pending formal approval of the settlements.[5] The reconsideration hearings accordingly were canceled, and on October 12, 1988, CHHC denied the plaintiffs' petitions for party status in those hearings.

"The hospital's request shall specify in detail the reasons for such request. The commission shall hold such hearing and make a decision as to whether the request will result in a revision of the commission's rate order issued pursuant to section 19a-165q-44 of these regulations no later than 45 days from the date of receipt of the request and additional information that the commission deems is required. At any hearing thereon, payers and other interested parties may participate in accordance with the Commission's rules of practice. If the rate order is revised the hospital will implement such revision no later than 30 days from the date of such commission decision."

[4] See footnote 3, supra.

[5] The temporary stay orders were periodically extended either by CHHC or at the hospitals' request until the settlements were finally approved.

Thereafter, on October 27, 1988, the plaintiffs filed a petition for a declaratory ruling pursuant to § 4-176[6] referenced to all of the hospital dockets and requesting rulings on twenty-eight issues pertaining to the procedures employed by CHHC in conducting the informal discussions, temporarily staying the original rate orders and reaching the agreed settlements.[7] The basic allegation in the petition was that the procedures were improper and unauthorized by statute or regulation, and therefore, any alteration of the original rate orders should be declared void. On December 6, 1988, CHHC issued a "Notice of Declaratory Ruling Hearing" stating that it would rule on fifteen listed issues "which appear to be of key concern to the [plaintiffs]" after a hearing scheduled for January 17, 1989. CHHC further stated that "this declaratory ruling proceeding is separate and independent from any proceedings related to the . . . rate orders for specific hospitals." Before the hearing date arrived, however, the plaintiffs learned that CHHC had issued formal decisions approving the agreed settlements on December 20, 1988.

The plaintiffs then pursued two courses of action. First, they filed thirty-two administrative appeals in the Superior Court pursuant to General Statutes § 4-183 (a)[8] from CHHC's decisions revising the origi-

---

[6] See footnote 1, supra.

[7] The plaintiffs amended their petition on November 15, 1988, to include two additional issues.

[8] "[General Statutes (Rev. to 1989)] Sec. 4-183. APPEAL TO SUPERIOR COURT. (a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review by way of appeal under this chapter, provided, in case of conflict between this chapter and federal statutes or regulations relating to limitations of periods of time, procedures for filing appeals or jurisdiction or venue of any court or tribunal, such federal provisions shall prevail. A preliminary, procedural or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy."

This statute was amended, effective July 1, 1989, by Public Acts 1988, No. 88-317, §§ 23, 107.

nal rate orders. Those appeals were dismissed by the court for lack of aggrievement, and we upheld the judgment of dismissal in *CBIA I,* supra. Second, the plaintiffs notified CHHC that they would not participate in the declaratory ruling proceeding due to its modification of the issues on which they had requested rulings in their petition, and due to its refusal to permit the disposition of those issues in the context of the hospital rate reconsideration proceedings. The plaintiffs additionally informed CHHC that its "rewriting" and "disembodiment" of their petition "constitute[d] a final and adverse ruling" on the petition, and, "because [CHHC] issued its final decision on the Requested Rulings without first conducting a public fact-finding hearing, the [plaintiffs] have the right, pursuant to [§§] 4-175 and 4-176, to seek a Declaratory Judgment in the Superior Court."

Thereafter, in accordance with their stated intentions, the plaintiffs challenged CHHC's decisions revising the original rate orders by filing this action for a declaratory judgment in the Superior Court pursuant to §§ 4-175, 4-176, 52-29 (a), and pursuant to Practice Book §§ 388 through 394. The plaintiffs alleged in their complaint, among other things, that CHHC's "failure to follow proper rate reconsideration procedures, its negotiation and entry of Agreed Settlements, and its adverse ruling or refusal to rule on the Petition for Declaratory Rulings, as amended, all constitute the application of regulations and implementation of certain orders which interfere with or impair, or which threaten to interfere with or impair, the legal rights or privileges of the plaintiffs." Subsequently, the defendants moved to dismiss the plaintiffs' action on the ground that they had failed to exhaust available administrative remedies because they had circumvented the scheduled declaratory ruling proceeding.

The court, concluding that the plaintiffs had indeed failed to exhaust their administrative remedies, dismissed the action for lack of jurisdiction on January 30, 1990.[9] The plaintiffs appealed to the Appellate Court, and we transferred the appeal to this court in accordance with Practice Book § 4023.

Although several issues have been raised for our consideration, both parties have briefed the issue of whether the plaintiffs had standing to bring the declaratory judgment action in the first instance. Our conclusion that the plaintiffs lacked the requisite standing and our affirmance of the judgment of dismissal on this ground obviates the necessity to consider the other issues raised.[10]

The defendants contend that the plaintiffs did not have standing to bring the declaratory judgment action for the reasons set forth in our recent decision in *CBIA I.* That case, as noted above, involved an administrative appeal under § 4-183 (a)[11] taken by the plaintiffs in this case from the same decisions of CHHC revising the original rate orders that are the subject of this case. We held in *CBIA I* that the plaintiffs were not aggrieved by the decisions, as is necessary for an

[9] In light of its determination that the plaintiffs had not exhausted their administrative remedies, the court declined to consider whether they lacked standing to maintain the action as claimed by the defendants as an alternate ground for dismissal.

[10] The issues raised by the plaintiffs that we decline to address are: (1) whether the court properly concluded that the plaintiffs failed to exhaust their administrative remedies; and (2) whether the judgment can be affirmed on the ground that the relief sought by the plaintiffs should have been pursued in an administrative appeal rather than in an action for a declaratory judgment. We also do not consider whether our decision in *Connecticut Business & Industry Assn., Inc.* v. *Commission on Hospitals & Health Care,* 214 Conn. 726, 573 A.2d 736 (1990), renders this appeal moot as claimed by the defendants.

[11] See footnote 8, supra.

administrative appeal pursuant to § 4-183 (a), because they had "failed to demonstrate a legal interest in the subject matter of the decisions approving the settlement agreements that can be distinguished from the interest of the general public in hospital rate increases." *CBIA I*, supra, 734. In reaching that conclusion, we noted: "The fact that [the plaintiffs] are obligated contractually to pay the rates established by CHHC in these decisions gives them no more standing than their policyholders or other contractual beneficiaries would have to challenge the decision. These beneficiaries, in turn, have no greater interest than those members of the general public who have no health insurance and must pay the rates established. The financial impact of an increase in hospital rates is borne by all members of the public when they require hospitalization and are presented with bills for the services rendered. The agreements the plaintiffs have made to bear or share these hospitalization expenses with their policyholders or other contractual obligees do not create aggrievement for the purpose of an appeal unless those who pay directly for their hospitalization would be similarly aggrieved." Id., 730–31.[12]

In response to the defendants' contention, the plaintiffs argue that the principles set forth in *CBIA I* are limited in application to administrative appeals filed pursuant to § 4-183 (a). They maintain, further, that by virtue of our decision in *Connecticut Assn. of Health*

---

[12] Furthermore, we rejected the plaintiffs' claim that they had a unique legal interest in the rate order decisions by virtue of § 19a-165q-45 (b) of the Regulations of Connecticut State Agencies. That regulation placed "payers" such as the plaintiffs on an equal par with "other interested parties" such as members of the general public and could not, therefore, be construed to elevate the status of payers for aggrievement purposes above that of members of the general public. *Connecticut Business & Industry Assn., Inc.* v. *Commission on Hospitals & Health Care*, 214 Conn. 726, 732–733, 573 A.2d 736 (1990).

*Care Facilities, Inc.* v. *Worrell,* 199 Conn. 609, 508 A.2d 743 (1986), the criteria for standing to bring a declaratory judgment action pursuant to § 4-175[13] "are significantly more liberal than those of § 4-183 (a)." Specifically, the plaintiffs claim that "[t]here is no requirement in the standing test applied . . . in *Worrell* under § 4-175 that [the] plaintiffs' rights must differ from those of the general public as set forth under the . . . test that governs § 4-183 [a]." This claim is without merit.

While *Worrell* involved a declaratory judgment action brought under §§ 4-175 and 52-29 (a) by two associations that had suffered adverse administrative rulings on petitions for declaratory rulings filed pursuant to § 4-176, that procedural happenstance played little or no role in the decision reached in *Worrell.* It was not stated or intimated in *Worrell* that the decision was intended to liberalize the doctrine of standing for purposes of declaratory judgment actions under § 4-175 as opposed to administrative appeals under § 4-183 (a). Subsequent cases applying the principles set forth in *Worrell* in a variety of procedural settings lend additional support to the proposition that *Worrell* was not designed for, nor confined to, cases involving similar procedural underpinnings. See *Board of Pardons* v. *Freedom of Information Commission,* 210 Conn. 646, 650, 556 A.2d 1020 (1989) (administrative appeal pursuant to General Statutes [Rev. to 1985] §§ 1-21i [d], 4-183); *State Medical Society* v. *Board of Examiners in Podiatry,* 203 Conn. 295, 304–305, 524 A.2d 636 (1987) (administrative appeal pursuant to General Statutes §§ 4-176 and 4-183); *University of Connecticut Chapter, AAUP* v. *Governor,* 200 Conn. 386, 389, 512 A.2d 152 (1986) (action for injunction); see also *Paucatuck Eastern Pequot Indians* v. *Indian Affairs*

---

[13] See footnote 1, supra.

*Council,* 18 Conn. App. 4, 10, 555 A.2d 1003 (1989) (administrative appeal pursuant to General Statutes § 4-183).

Furthermore, *Worrell* did not abandon the traditional standing requirement that a party bringing suit must "demonstrate a legal interest in the subject matter of [a controversy] that can be distinguished from the interest of the general public . . . ." *CBIA I,* supra. *Worrell* broke new ground only to the extent that it overruled an earlier precedent holding that an association was without standing to bring suit on behalf of its members "unless it has a right, in itself, in the subject matter of the controversy which a decree will affect"; *Connecticut Society of Architects, Inc.* v. *Bank Building & Equipment Corporation,* 151 Conn. 68, 74, 193 A.2d 493 (1963); and "adopted the federal standard for representational standing as delineated by the United States Supreme Court in *Hunt* v. *Washington State Apple Advertising Commission,* 432 U.S. 333, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977)." *State Medical Society* v. *Board of Examiners in Podiatry,* 203 Conn. 295, 304, 524 A.2d 636 (1987); see *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell,* supra, 615–17. Although *Worrell* disavowed the prior requirement that an association must demonstrate a personal interest in a controversy; *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell,* supra, 614–16; the assurance of a justiciable controversy inherent in that requirement was preserved by adjusting the focus of the typical standing inquiry to scrutinize the nature of the interests of the association's members. The association accordingly was required to establish, as one of three prerequisites to representational standing, that its " 'members would otherwise have standing to sue in their own right . . . .' " Id., 616. The association involved in *Worrell* satisfied this prerequisite since its

"members would . . . have standing to seek declaratory judgments because they allege direct, personal injury" resulting from the conduct challenged by the association. Id., 617. While it was not explicitly stated in *Worrell,* therefore, it was implicit that the members had a legal interest in the controversy distinguishable from the interest of the general public.

Consequently, the plaintiffs cannot disentangle themselves from the standing criteria applied in *CBIA I* on the basis of an illusory distinction in *Worrell* between standing for purposes of § 4-175 as opposed to § 4-183 (a). In the event of their failure to prevail on this claim, however, the plaintiffs raise the alternative, though analogous, contention that the declaratory judgment provisions of § 52-29 (a)[14] and Practice Book § 390[15] are more lenient as to standing than § 4-183 (a), and of course, they maintain that they satisfy those provisions. We disagree.

" 'It is a basic principle of our law . . . that the plaintiffs must have standing in order for a court to have jurisdiction to render a declaratory judgment.' *Connecticut Assn. of Boards of Education, Inc.* v. *Shedd,* 197 Conn. 554, 558, 499 A.2d 797 (1985)." *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell,* supra, 613. Our rules of practice, mirroring the fed-

---

[14] See footnote 1, supra.

[15] "[Practice Book] Sec. 390. —CONDITIONS

"The court will not render declaratory judgments upon the complaint of any person:

"(a) unless he has an interest, legal or equitable, by reason of danger of loss or of uncertainty as to his rights or other jural relations; or

"(b) unless there is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement between the parties; or

"(c) where the court shall be of the opinion that the parties should be left to seek redress by some other form of procedure; or

"(d) unless all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof."

eral constitutional "case or controversy" requirement; see *Flast* v. *Cohen,* 392 U.S. 83, 95, 88 S. Ct. 1942, 20 L. Ed. 2d 947 (1968); accordingly provide that no court will render a declaratory judgment on the complaint of a person "unless he has an interest, legal or equitable, by reason of danger of loss or of uncertainty as to his rights or other jural relations which requires settlement between the parties." Practice Book § 390 (a). The plaintiffs claim that they have an "interest" in the rate order decisions that falls within the ambit of this provision because they are contractually obligated to pay the hospitals in accordance with the revised rate orders, and since they are "uncertain whether they must allow the Hospitals payment only in accordance with the initial 1989 Rate Orders, and whether they can seek reimbursement or take credits for the additional moneys paid" in compliance with the orders. We are unpersuaded that an interest of this nature is sufficient to invoke the declaratory judgment jurisdiction of our courts.

"An action for a declaratory judgment, valuable as it has become in modern practice, is not a procedural panacea for use on all occasions." *Liebeskind* v. *Waterbury,* 142 Conn. 155, 158, 112 A.2d 208 (1955). In providing statutory authority for courts to grant declaratory relief, the legislature did not intend " 'to broaden their function so as to include issues which would not be such as could be determined by the courts in ordinary actions.' " *McGee* v. *Dunnigan,* 138 Conn. 263, 267, 83 A.2d 491 (1951), quoting *Board of Education* v. *Board of Finance,* 127 Conn. 345, 347, 16 A.2d 601 (1940). The declaratory judgment procedure consequently may be employed only to resolve "a justiciable controversy where the interests are adverse, where there is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal

relations which requires settlement." *Horton* v. *Meskill,* 172 Conn. 615, 627, 376 A.2d 359 (1977). A party pursuing declaratory relief must therefore demonstrate, as in ordinary actions, a "justiciable right" in the controversy sought to be resolved, that is, "contract, property or personal rights . . . as such will be affected by the [court's] decision . . . ." *McGee* v. *Dunnigan,* supra, quoting *Board of Education* v. *Board of Finance,* supra, 348. A party without a justiciable right in the matter sought to be adjudicated lacks standing to raise the matter in a declaratory judgment action. Id.

We recently held that a party who was "simply a member of the general public who has not demonstrated how she was harmed in a unique fashion" by the conduct she had challenged in a declaratory judgment action had failed to establish "a colorable claim of *direct* injury," and accordingly lacked standing to maintain the action. (Emphasis in original.) *Monroe* v. *Horwitch,* 215 Conn. 469, 473, 576 A.2d 1280 (1990). For the reasons set forth in *CBIA I,* neither the plaintiffs in this case nor their members have an interest in CHHC's decisions revising the original rate orders that is distinguishable from that of the general public. Consequently, the plaintiffs lacked standing to challenge the decisions in a declaratory judgment action, and the action was properly dismissed.

The judgment is affirmed.

In this opinion the other justices concurred.