[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] STATEMENT OF APPEAL
This is an appeal from the decision of the defendant, New London planning zoning commission (commission), approving an application of the defendant, Corcoran Jennison Company (Corcoran), to amend the New London zoning regulations and zoning map. The plaintiffs, Fort Trumbull Conservancy, LLC (Conservancy), Amy Hallquist and Stephen Hallquist, bring this appeal pursuant to General Statutes § 8-8, § 22a-19
and § 22a-20.
 BACKGROUND
In October of 1999, the New London Development Corporation (NLDC), a non-profit organization acting as an agent on behalf of the city, selected Corcoran as the developer of the waterfront property known as the Fort Trumbull area, located along Nameaug Street, Walbach Street, Smith Street and Goshen Street in New London, Connecticut. (Return of Record [ROR], Exh. 48.) On September 28, 2000, Corcoran filed an application, revised on November 16, 2000, to amend the zoning regulations and zoning map of New London. (ROR, Exh. 41; Defendant's Exh. 1.) The application proposed to establish a maritime village zoning district, allow for retail sale of alcohol and to amend the zoning map to include lot and bulk requirements for the proposed district. (ROR, Exh. 33.)
The commission held a public hearing on December 14, 2000, continued at a special meeting on December 28, 2000. (ROR, Exhs. 10, 14.) At the public hearing, the plaintiffs filed notices of intervention to raise environmental concerns pursuant to General Statutes § 22a-19 and § 22a-20. (Defendant's Exhs. 17-19.) On January 18, 2001, the commission approved the application with conditions. (ROR, Exh. 20.) In support of its decision, the commission made the following findings: (1) the proposed district would best serve the public; (2) the changes are in accordance with the Fort Trumbull municipal development plan; (3) the proposed district is consistent with the New London plan of conservation CT Page 11051 and development, specifically with chapters 13 and 14; (4) the proposed district is consistent with the policies of General Statutes § 22a-92
and complies with the requirements of General Statutes § 22a-102; (5) the proposed district complies with the zoning regulations; and (6) the proposed district is not likely to have the effect of unreasonably polluting, impairing, or destroying the public trust in the air, water, or other natural resources of the state. (ROR, Exh. 55, pp. 25-27.)
The decision was published in The Day on January 22, 2001. (ROR, Exh. 22.) The plaintiffs thereafter filed the present appeal alleging that the commission acted arbitrarily, illegally and in abuse of its discretion in granting Corcoran's application. The plaintiffs set forth the following claimed errors: (1) Corcoran's application did not comply with the zoning regulations governing amendment proposals; and (2) the commission proffered reasons for its decision that were not supported by the record.[1]
 AGGRIEVEMENT
Before addressing the substantive components of this appeal, the court must address the threshold issue of aggrievement. "[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal." Jolly, Inc. v. Zoning Boardof Appeals, 237 Conn. 184, 192, 676 A.2d 831 (1996). In the present case, the applicant, Corcoran, did not appeal the decision of the commission and, accordingly, the intervenors are left to establish aggrievement.
Amy and Stephen Hallquist assert standing as intervenors pursuant to General Statutes § 22a-19. "Section 22a-19 (a) allows any person, partnership, corporation, association, organization or any other legal entity to intervene as a party in any administrative . . . or other proceeding, and in any judicial review thereof that involves conduct which has, or is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state." (Internal quotation marks omitted.) Red Hill Coalition, Inc. v. Conservation Commission,212 Conn. 710, 715, 563 A.2d 1339 (1989). "An intervening party under § 22a-19 (a), however, may raise only environmental issues." Id.
An individual who files a notice of intervention at the underlying agency hearing, pursuant to § 22a-19 (a), has standing to appeal from the agency's decision for that limited purpose. Branhaven Plaza, LLC v.Inland Wetlands Commission, 251 Conn. 269, 276 n. 9, 740 A.2d 847
(1999). The Hallquists filed notices of intervention at the public CT Page 11052 hearing held on December 14, 2000. (Defendant's Exhs. 18-19.) The court therefore finds that the Hallquists have standing to challenge the commission's decision with respect to environmental issues only.
Like the Hallquists, the Conservancy originally intervened pursuant to § 22a-19. (ROR, Defendant's Exh. 17). The Conservancy asserts, however, that it can raise issues other than those allowed by an intervenor under § 22a-19 because at least one of its members is aggrieved under § 8-8. "[T]he federal test for representational standing . . . was articulated in Hunt v. Washington State AppleAdvertising Commission, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383
(1977). We have adopted that test as a matter of Connecticut law. . . . Under that test, [a]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." (Citation omitted; internal quotation marks omitted.)Connecticut Associated Builders Contractors v. Hartford, 251 Conn. 169,185, 740 A.2d 813 (1999).
The first prong of the test is satisfied in the present case. The Conservancy proffered evidence that at least one of its members owns property within the area affected by the application. (Plaintiff's Exh. 1.) Landowners within the zone subject to the amended regulations are statutorily aggrieved pursuant to § 8-8 (a)(1). Lewis v. Planning Zoning Commission, 62 Conn. App. 284, 297, 771 A.2d 167 (2001). It is well settled that aggrievernent does not have to be shared by the membership in its entirety before an association may have representational standing. Assn. of Not-For-Profit Providers for theAging v. Dept. of Social Services, 244 Conn. 378, 387-88, 709 A.2d 1116
(1998).
The Conservancy also meets the germaneness prong of the test. "[I]t is highly unlikely second prong of germaneness was meant to set the narrow perimeter of centrality of purpose. . . . Rather, it would seem to require only that an organization's litigation goals be pertinent to its special expertise and the grounds that bring its membership together." (Internal quotation marks omitted.) Paucatuck Eastern Pequot Indians v. IndianAffairs Council, 18 Conn. App. 4, 11, 555 A.2d 1003 (1989). Accordingly, the germaneness prong only requires a "mere pertinence between the litigation subject and the organizational purpose." Id.
The Conservancy's primary function includes the preservation and conservation of the Fort Trumbull area. (ROR, Exhs. 17.) The present CT Page 11053 appeal directly affects the environment of Fort Trumbull. As such, the plaintiffs have raised numerous claims speaking to the environmental impact of the application. The Conservancy has complied with the second prong of the test.
The Conservancy has also satisfied the final prong of the representational standing test. "[T]he propriety of accepting [r]epresentational standing depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will enure to the benefit of those members of the association actually injured." (Internal quotation marks omitted.) Connecticut Associated Builders Contractorsv. Anson, 251 Conn. 202, 210, 740 A.2d 804 (1999). The individual members are not indispensable parties to this appeal because the plaintiffs do not seek damages; State Medical Society v. Board of Examiners inPodiatry, 203 Conn. 295, 305, 524 A.2d 636 (1987); rather, they request injunctive relief and reversal of the commission's decision. The court can assess the merits of the appeal without the participation of the Conservancy's membership. Moreover, the commission and the successful applicant are the only indispensable parties to this appeal. R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 25.5, pp. 5-6. The court therefore finds that the Conservancy has representational standing to pursue this appeal on behalf of its membership.
 SERVICE OF PROCESS
General Statutes § 8-8 (b) provides in relevant part that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) [now subsections (f) and (g)] of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." General Statutes § 8-8 (b). The record contains an affidavit of publication attesting that notice of the commission's decision was published in The Day on January 22, 2001. (ROR, Exh. 22.) On April 5, 2001, the commission filed a motion to dismiss the appeal because the plaintiffs did not commence the appeal within the prescribed fifteen day period pursuant General Statutes §8-8 (b). The court, Hurley, J., denied the motion to dismiss on April 30, 2001. Accordingly, this appeal was commenced in a timely manner by service of process on the proper parties.
 STANDARD OF REVIEW
The review of a zoning authority's decision to amend its regulations is CT Page 11054 well settled. "[T]he commission, acting in a legislative capacity, [has] broad authority to adopt . . . amendments. . . . In such circumstances, it is not the function of the court to retry the case. Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached. . . . This legislative discretion is wide and liberal, and must not be disturbed by the courts unless the party aggrieved by that decision establishes that the commission acted arbitrarily or illegally." (Citations omitted; internal quotation marks omitted.) Harris v. Zoning Commission, 259 Conn. 402, 416, 788 A.2d 1239
(2002).
"When a zoning agency has stated its reasons for its actions, a court should not reach beyond those stated purposes to search the record for other reasons supporting the commission s decision. . . . Rather, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations." (Citation omitted; internal, quotation marks omitted.)Harris v. Zoning Commission, supra, 259 Conn. 420. "The action of the [board] should be sustained if even one of the stated reasons is sufficient to support it." (Internal quotation marks omitted.) PropertyGroup, Inc. v. Planning Zoning Commission, 226 Conn. 684, 697,628 A.2d 1277 (1993).
"Courts will not interfere with these local legislative decisions unless the action taken is clearly contrary to law or in abuse of discretion. . . . [T]he test of the action of the commission is twofold: (1) The zone change must be in accord with a comprehensive plan . . . and (2) it must be reasonably related to the normal police power purposes enumerated in [General Statutes] § 8-2. . . ." (Citations omitted; internal quotation marks omitted.) Harris v. Zoning Commission, supra,259 Conn. 417.
 DISCUSSION
The plaintiffs appeal from the defendant's decision to approve Corcoran's application to amend the zoning regulations and the zoning map. In support of their appeal, the plaintiffs assert the following arguments: (1) Corcoran's application is inadequate because it is not a "verified petition" submitted by either a party with a legal or equitable interest in the land or by a proper city official; (2) the commission's CT Page 11055 stated reasons are inadequate;[2] (3) the proposed district is not in accordance with the city's comprehensive plan; (4) the commission did not act pursuant to its statutorily prescribed police powers; (5) the proposed district was not in agreement with the city or state plans of conservation and development; (6) the proposed district is inconsistent with the Coastal Management Act; and (7) the commission did not consider the criteria enumerated under General Statutes § 22a-19 (b). The court will consider each argument in turn.
 A Whether the Application Complies with the § 1110 of the ZoningRegulations
The plaintiffs claim that Corcoran's application did not comply with the commission's regulations and, accordingly, the commission should have refrained from acting upon the proposed district. Specifically, the plaintiffs argue that Corcoran did not: (1) submit a "verified petition;" (2) demonstrate that it has a legal or equitable interest in the subject property; or (3) submit a petition by a proper city official. The commission responds that the plaintiffs failed to proffer any authority classifying these alleged deficiencies as jurisdictional defects and, moreover, that the court should not review the agency's decision for technical infirmities.[3]
General Statutes § 8-3 (c) provides in relevant part that "[a]ll petitions requesting a change in the regulations . . . shall be submitted in writing and in a form prescribed by the commission. . . ." When the zoning regulations are silent on the matter, any person may petition the local zoning authority to amend the text of regulations that apply throughout the municipalility Ghent v. Zoning Commission, 220 Conn. 584,590-91, 600 A.2d 1010 (1991).
In the present case, however, the zoning regulations contain requirements regarding applications for amendments to the zoning regulations. Section 1110 provides in relevant part that "[a]ny such . . . amendment . . . may be initiated by: A. The filing of a verified petition of one or more persons having legal or equitable interest in the property affected by the proposed amendment, which . . . shall be filed in triplicate . . . and shall contain reasons why the change of zone is being sought, and by a fee . . . to cover the cost of administration. B. Where the interest of the City are concerned, a petition by a proper official shall be filed in duplicate with the [zoning officer]."
The court's inquiry regarding the adequacy of Corcoran's application is CT Page 11056 twofold: (1) determine which subsection is applicable to Corcoran; and (2) ascertain whether Corcoran complied with the requirements of that subsection. Under both subsections, the court must first determine whether the application submitted constitutes a "verified petition."
The plaintiffs contend that Corcoran did not submit a verified petition. They specifically argue that Corcoran's application merely serves as an "acknowledgment" rather than a "verification." This argument is unavailing.
The application requires the applicant to sign and date a statement which provides in relevant part that "[t]he undersigned hereby acknowledges that this application and statements submitted herewith are true to the best of his/her knowledge. . . ." (ROR, Exh. 41.) The application form is provided by the Office of Development Planning of the City of New London. (ROR, Exh. 41.) In addition to the signature of Corcoran's president, Marty Jones, the developer's attorney, Glenn T. Carberry, as an officer of the court, also signed the application. (ROR, Exh. 41.) The court finds that the application sufficiently complies with the verification requirement expressed in § 1110 of the regulations.
The court finds that subsection A applies to Corcoran's application. The question is whether Corcoran has demonstrated that it has a legal or equitable interest in the subject proper The NLDC argues that Corcoran has done so, and emphasizes Corcoran's contractual interest in undertaking the development project. Accordingly, Corcoran has complied with subsection A of the regulations.
 B Whether the Commission Properly Determined that the Proposed District Was in Accordance with the City's Comprehensive Plan
The plaintiffs also contest the commission's finding that the proposed "changes are in accordance with a comprehensive plan." (ROR, Exh. 55, p. 25.) Moreover, the plaintiffs assert that the commission failed to articulate what comprehensive plan it relied upon. The commission responds that it made a proper finding that the amendments complied with the city's comprehensive plan and that this determination was supported by the record.
"A comprehensive plan has been defined as d general plan to control and direct the use and development of property in a municipality or a large part thereof by dividing it into districts according to the present and potential use of the properties." (Internal quotation marks omitted. CT Page 11057Heithaus v. Planning Zoning Commission, 258 Conn. 205, 218, 779 A.2d 750
(2001). "The comprehensive plan . . . consists of the zoning regulations themselves and the zoning map which has been established pursuant to those regulations." Burnham v. Planning Zoning Commission, 189 Conn. 261,267, 455 A.2d 339 (1983). "The requirement of a comprehensive plan is generally satisfied when the zoning authority acts with the intention of promoting the be interests of the entire community." (Internal quotation marks omitted.) Heithaus v. Planning Zoning Commission, supra,258 Conn. 218.
The record supports the commission's findings that the proposed district adheres to the city's comprehensive plan, which in this case is found in the zoning regulations. Article I of the regulations sets forth the intent and purpose of the regulations. Section 110 provides, inter alia, that "[t]he purpose of these zoning regulations is to encourage the most appropriate use of the land and to protect important environmental features . . . to promote health, safety, and the general welfare; and to that end to designate, regulate, and restrict the location and use of buildings, structures, and land. . . ." (ROR, Exh. 56.)
The stated purpose of the proposed district is to "encourage the development of discrete waterfront areas of the City pursuant to a comprehensive development plan. . . ." (Defendant's Exh. 2.) The district is intended to take advantage of the unique character of the waterfront, encourage public access to the waterfront, encourage water dependent uses and maximize economic benefit to the city. (Defendant's Exh. 2.)
The record demonstrates that the proposed district is consistent with the city's zoning regulations. The department of environmental protection submitted a detailed report outlining environmental concerns and recommendations that, if adopted, would preserve the coastal environment. (ROR, Exh. 38.) Several members of the public testified both for and against the proposed district. These speakers raised issues regarding the environment and the necessity for appropriate development along the waterfront. (ROR, Exh. 10, pp. 3-4.) Robert M. Thorson, a professor at the University of Connecticut, also testified in favor of the proposed district. (ROR Exh. 53, pp. 67-74.) Additionally, Robert Fromer, an "expert" speaking on behalf of the plaintiffs, discussed the environmental impact of the proposed district. (ROR, Exh. 14, pp. 2-4: Exh. 53.)
The record illustrates the concerns voiced regarding the need for economic development environmental preservation of the waterfront, water-dependent uses, and the overall impact of the proposed district upon the general welfare of the city. The comments made by the public CT Page 11058 demonstrate a desire to increase public access to the waterfront and a concern for controlled development through the implementation of the new district. (ROR, Exh. 10, p. 4.) All of these concerns fall within the stated purpose of the zoning regulations. Based upon a consideration of these concerns, the commission could reasonably conclude that the proposed district would benefit the community. The court therefore finds that the proposal is consistent with the city's comprehensive plan. Accordingly, the plaintiffs' appeal cannot be sustained upon this ground.
 C Whether the Proposed District Was Reasonably Related to the Police Powers of the Commission
The plaintiffs argue that the commission acted outside of its statutorily prescribed police powers in approving Corcoran's application. The commission responds that its decision satisfied this prong of the test because the zone change: (1) is consistent with the Fort Trumbull Municipal development plan; (2) provides public access to the waterfront; and (3) supports and encourages water dependent uses while reducing the likelihood of pollution.
In order for a zone change to be upheld, it must be reasonably related to the normal police powers enumerated in General Statutes § 8-2.Harris v. Zoning Commission, supra, 259 Conn. 417. Section 8-2 (a) provides in pertinent part: "Such regulations shall be designed to . . . promote health and the general welfare. . . . Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of the land throughout such municipality." General Statutes §8-2 (a).
The record discloses issues raised by the parties, members of the public, the department of environmental protection and the commission relating to the preservation of the environment development, public access to the waterfront and the nature of the uses permitted in the propose district. (ROR, Exhs. 10, 14, 38.) These concerns fall squarely within the commission's police powers articulated in § 8-2. The court therefore declines to sustain the plaintiff's appeal upon this claimed error.
 D
CT Page 11059 Whether the Commission Properly Determined that the Proposed District Complied with the City's Plan of Conservation and Development
The plaintiffs next argue that commission improperly determined that "[t]he proposal is consistent with the City's Plan of Conservation and Development specifically with regard to land and water use strategies of Chapter 13 which is the City's Municipal Coastal Plan/Program and Chapter 14 which are the land use strategies for the city." (ROR, Exh. 55, p. 26.) The plaintiff also contend that the commission failed to consider the state plan of conservation and development. These arguments are without merit.[4]
General Statutes § 8-3a (a) states in relevant part that "[i]n any municipality which has combined planning and zoning commission . . . the commission shall state on the record its findings on consistency of a proposed zoning regulation or boundaries or changes thereof with the plan of development of the municipality." General Statutes § 8-3a (a). The failure to give reasons pursuant to § 8-3 does not render the commission's action void because failure to comply with § 8-3 is directory only. Morningside Assn. v. Planning Zoning Board,162 Conn. 154, 156, 292 A.2d 893 (1972); see also Savings Bank ofRockville v. Tolland, Superior Court, judicial district of Tolland, Docket No. CV 96 59682 (November 20, 1996, Klaczak, J.) (18 Conn.L.Rptr 274, 280). "Additionally, the plan of development is merely advisory to and does not bind the commission." Savings Bank of Rockville v. Tolland, supra, 18 Conn.L.Rptr 280.
The city's policies regarding waterfront development are found in § 13.2 of the city's plan of conservation and development. Section 13.2 of the plan states that the city's policy is to "[p]romote the development of new and encourage the protection of the existing water dependent and related uses on the waterfront in order to create a balanced and multiple use development of the coastal area." (Defendant's Exh. 5.) The plan also emphasizes the instrumental role the waterfront plays in the revitalization of the commercial core of the downtown area. (Defendant's Exh. 5.) Section 13.23 focuses on the enhancement of the waterfront's public access points. Chapter 14 speaks to the commercial aspects of the waterfront area, specifically the enhancement of the variety of marine oriented and waterfront dependent activities including retail, service and residential activity. (Defendant's Exh. 5.)
The city's plan of conservation and development certainly encourages commercial development of the waterfront area, going as far as to designate the waterfront as an integral component of the downtown revitalization. The plan also recognizes the need to preserve water CT Page 11060 dependent uses and the coastal environment. The record demonstrates that the commission considered these concerns when approving Corcoran's application. (ROR, Exhs. 10, 14, 38.) Because the record establishes that the proposed district is consistent with the plan of conservation and development, and because the plan is advisory in nature, the court cannot sustain the plaintiffs' appeal upon this basis.
 E Whether the Commission Properly Determined that the Proposed District Complies With the Coastal Management Act
The plaintiffs claim that the commission improperly determined that the proposed district conforms to and is consistent with General Statutes § 22a-92 and General Statutes § 22a-102 (b). (ROR, Exh. 55, p. 26.) Specifically, the plaintiffs argue that the proposed district does not comply with the criteria enumerated in § 22a-102 (b). The commission responds that the proposal is in accordance with the Coastal Management Act, General Statutes § 22a-90 et seq.
"The act delegates the administration of the state-wide policy of planned coastal development to local agencies charged with responsibility for zoning and planning decisions. See General Statutes §§ 22a-105,22a-106. The act envisages a single review process, during which proposals for development within the coastal boundary will simultaneously be reviewed for compliance with local zoning requirements and for consistency with the policies of planned coastal management." (Internal quotation marks omitted.) DeBeradinis v. Zoning Commission, 228 Conn. 187,195-96, 635 A.2d 1220 (1994).
In carrying out this duty, the commission is obligated to determine whether the proposed district adheres to the long list of policies enumerated in § 22a-92.[5] The commission must also consider the following criteria when considering any proposed changes to its zoning regulations involving the coastal boundary: "(1) The character and distribution of the coastal resources . . . within its coastal boundary, the capacity of and limitations on such resources to support the development, and the types and methods of development compatible with the wise use, protection and enhancement of such resources; (2) the nature and pattern of existing development and (3) the need for public services." General Statutes § 22a-102 (b).
Although the plaintiffs do not clearly establish how the proposed district contravenes the act, the record supports the commission's finding. The department of education stated in its report that if CT Page 11061 "[p]roperly executed, the Maritime Village concept will create a vibrant area that draws people to experience a unique blend of views, water access, recreation, services, shops, and eateries surrounding by a sufficient density of residences to ensure that the area is always active." (ROR, Exh. 38, p. 1.) The department continues by discussing a number of possible modifications that would ensure consistency with the act. In reaching its decision, the commission considered, along with the department's report, a substantial amount of testimony from the parties and the general public regarding water-dependent uses and public access to the waterfront. (ROR, Exhs. 10, 14.) Finally, the proposed district encourages general public access, preservation and encouragement of water dependent uses and the overall implementation of the act. (Defendant's Exhs. 2, 7.)
The record demonstrates that the commission considered the criteria required by § 22a-102 (b). The commission's decision also comports with the policies listed under § 22a-92 of the act. Accordingly, the court declines to sustain the plaintiffs' appeal upon the basis that the proposed district is inconsistent with the Coastal Management Act.
 F Whether the Commission Properly Found that the Proposed District Does Not Detrimentally Impact the Environment Pursuant to § 22a-19
The plaintiffs finally challenge the commission's finding that there is "no evidence which establishes that the application does or is reasonably likely to have the effect of unreasonably polluting, impairing, or destroying the public trust in the air, water, or other natural resources of the State." (ROR, Exh. 55, p. 27.) In support of this claimed error, the plaintiffs argue that they have met their burden of production under § 22a-19 (a) and, accordingly, the commission was obligated to consider reasonable and prudent alternatives pursuant to § 22a-19 (b). Because the commission did not consider possible alternatives to the proposed amendments, the plaintiffs argue that the commission improperly approved Corcoran's application.
As a result of the Hallquists' intervention under § 22a-19 (a), the commission was required "to consider the alleged unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resource of the state and no conduct shall be authorized or approved which does, or is reasonably likely to, have such effect so long as, considering all relevant surrounding circumstances and factors, there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare." General Statutes CT Page 11062 § 22a-19 (b); Red Hill Coalition, Inc. v. Town Plan ZoningCommission, 212 Conn. 727, 735, 563 A.2d 1339 (1989). The commission may, however, find that the proposed activity pollutes the environment, but that this pollution is not unreasonable. Manchester EnvironmentalCoalition v. Stockton, 184 Conn. 51, 59-60, 441 A.2d 68 (1981). The question of reasonableness is one of fact, and where the record supports the commission's conclusion that the proposed amendments do not violate § 22a-19 (b), the court must sustain the conclusion. Mystic MarinelifeAquarium, Inc. v. Gill, 175 Conn. 483, 502-03, 400 A.2d 726 (1978). "By its plain terms, General Statutes § 22a-19 (b) requires the consideration of alternative plans only where the commission first determines that it is reasonably likely that the project would causeunreasonable pollution, impairment or destruction of the public trust in the natural resource at issue." (Emphasis in original; internal quotation marks omitted.) Paige v. Town Plan Zoning Commission, 235 Conn. 448,462-63, 668 A.2d 340 (1995).
The record supports the commission's finding that the proposed district did not have the effect interdicted by § 22a-19. The plaintiffs testified at length about the environmental impact of the proposed district; (ROR, Exhs. 53-54); and proffered evidence in support of their position. (ROR, Exhs. 53-54.) The commission, however, previously approved the Fort Trumbull municipal development plan. (ROR, Exh. 53, p. 21.) The commission also had before it a report submitted by the department of environmental protection. (ROR, Exh. 38.) Additionally, Thorson, an expert introduced by Corcoran, testified that the proposed district would have a positive impact upon the city. (ROR, Exh. 53, pp. 67-74.)
Because it is within the commission's discretion to weigh the credibility of witnesses; Pelliccione v. Planning Zoning Commission,64 Conn. App. 320, 331, 780 A.2d 185, cert. denied, 258 Conn. 915,782 A.2d 1245 (2001); the court finds that the record supports the commission's decision. The commission could reasonably conclude, based upon the record, that there was no evidence indicating that the proposed district would harm the environment in approving the amendments and the probability that this harm would likely occur. Accordingly, the commission did not have to consider alternatives pursuant to § 22a-19 (b), and the court declines to sustain the plaintiffs' appeal upon this basis.
 CONCLUSION
Based upon the foregoing reasons, the plaintiffs' appeal is dismissed.
D. Michael Hurley, JTR CT Page 11063