CONNECTICUT ASSOCIATION OF HEALTH CARE FACIL-
ITIES, INC., ET AL. *v.* AUDREY M. WORRELL, M.D.,
COMMISSIONER OF MENTAL HEALTH
(12801)

CONNECTICUT HOSPITAL ASSOCIATION, INC., ET AL. *v.*
AUDREY M. WORRELL, M. D., COMMISSIONER
OF MENTAL HEALTH
(12802)

SHEA, DANNEHY, CALLAHAN, KULAWIZ and JACOBSON, Js.

Argued March 13—decision released May 13, 1986

*Louis B. Todisco,* with whom were *Martha E. Meng* and, on the brief, *Stephen E. Ronai* and *Martha Fosdick,* legal intern, for the appellant (named plaintiff in the first case).

*William J. Doyle,* with whom were *Jeanette C. Schreiber* and, on the brief, *John Q. Tilson, Melinda A. Agsten* and *Brian J. Casey,* for the appellant (named plaintiff in the second case).

*William J. McCullough,* assistant attorney general, with whom were *Richard J. Lynch,* assistant attorney general, and, on the brief, *Joseph I. Lieberman,* attorney general, for the appellee (defendant in both cases).

SHEA, J. The sole issue on these appeals is whether two health care associations have standing to bring declaratory judgment actions on behalf of their members. Both cases are appeals from judgments of the Superior Court dismissing the associations as plaintiffs on the ground that they lacked standing either individually or vicariously as representatives of their member health care providers. The plaintiffs are the Connecticut Association of Health Care Facilities, Inc., and the Connecticut Hospital Association, Inc., both nonstock corporations in which membership is voluntary. The defendant in both actions is the commissioner of the department of mental health (hereinafter the department). We find error in the conclusion of the court that the associations lack standing.

The complaints allege that prior to 1981 the department had accepted all patients committed to state mental hospitals pursuant to state statutory procedures. In July, 1981, however, the department adopted a policy of limiting admissions to state operated mental hospitals in order to maintain appropriate staff-patient ratios. In order to implement this policy, the plaintiffs claim that the department periodically refused to admit mentally ill patients committed to state facilities under

the statutory procedures. They further allege that the department's failure to follow the statutory requirements has precipitated a crisis in their member health care facilities and hospitals because of their inability to obtain admission to state operated hospitals for patients who have developed acute psychiatric conditions that require specialized care available only in a mental hospital.

Pursuant to General Statutes § 4-176,[1] the plaintiffs separately petitioned the department for a declaratory ruling acknowledging the department's obligations under our statutes to accept committed patients into state operated mental hospitals. The department refused to issue the requested declarations and, instead, issued a ruling stating that the department is only *required* to accept "any indigent mentally ill person, not a pauper, who is committed by the Probate Court to a state hospital for mental illness which is equipped to receive him, at the discretion of the probate court."

Pursuant to General Statutes § 4-175,[2] the plaintiffs separately commenced the present actions in the Superior Court, seeking declaratory judgments that chap-

[1] "[General Statutes] Sec. 4-176. DECLARATORY RULINGS. Each agency may, in its discretion, issue declaratory rulings as to the applicability of any statutory provision or of any regulation or order of the agency, and each agency shall provide by regulation for the filing and prompt disposition of petitions seeking such rulings. If the agency issues an adverse ruling, the remedy for an aggrieved person shall be an action for declaratory judgment under section 4-175 unless the agency conducted a hearing pursuant to sections 4-177 and 4-178 for the purpose of finding facts as a basis for such ruling, in which case the remedy for an aggrieved person shall be an appeal pursuant to section 4-183. If the agency fails to exercise its discretion to issue such a ruling, such failure shall be deemed a sufficient request by the plaintiff for the purposes of section 4-175. Rulings disposing of petitions have the same status as agency decisions or orders in contested cases."

[2] "[General Statutes] Sec. 4-175. DECLARATORY JUDGMENT ACTION TO DETERMINE VALIDITY OR APPLICABILITY OF A REGULATION OR ORDER. The validity or applicability of a regulation or order of an agency may be deter-

ter 306 of our statutes requires the department to accept as a patient any person committed to a state hospital under an emergency certificate as provided by General Statutes § 17-183 or by order of the Probate Court as provided by § 17-178 (c). The department filed motions to dismiss, alleging, inter alia, that the plaintiffs had no standing to bring the actions. The Superior Court granted the department's motions to dismiss only in respect to the two associations as plaintiffs in the cases, holding that these plaintiffs did not have standing to assert the claims of their members.[3] From these judgments the plaintiff associations have appealed to this court.

"The 'fundamental aspect of standing . . . [is that] it focuses on the party seeking to get his complaint before [the] court and not on the issues he wishes to have adjudicated.' *Flast* v. *Cohen,* 392 U.S. 83, 99, 88 S. Ct. 1942, 20 L. Ed. 2d 947 [1968]." *Hartford Kosher Caterers, Inc.* v. *Gazda,* 165 Conn. 478, 485, 338 A.2d 497 (1973). "Standing is not a technical rule intended to keep aggrieved parties out of court . . . . Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. See, e.g., *Baker* v. *Carr,* 369 U.S. 186, 204, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962); *Stern* v. *Stern,* 165

mined in an action for declaratory judgment brought in the superior court for the judicial district of Hartford-New Britain, if the regulation or order, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff. The agency shall be made a party to the action. A declaratory judgment may not be rendered unless the plaintiff has requested the agency to pass upon the validity or applicability of the regulation or order in question, pursuant to section 4-176, and the agency has either so acted or has declined to exercise its discretion thereunder."

[3] The court denied, however, the defendant's motions to dismiss as to the individual member health care facilities that were also plaintiffs below.

Conn. 190, 192, 332 A.2d 78 (1973)." *Maloney* v. *Pac*, 183 Conn. 313, 320–21, 439 A.2d 349 (1981). The requirements of justiciability and controversy are "ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity." Id., 321. "As long as there is some direct injury for which the plaintiff seeks redress, the injury that is alleged need not be great." Id.; see *Bassett* v. *Desmond*, 140 Conn. 426, 432, 101 A.2d 294 (1953). Where the nexus between the injury and the claim sought to be adjudicated is obvious and direct, a plaintiff has standing to maintain the claim. *Maloney* v. *Pac*, supra, 322.

"It is a basic principle of our law . . . that the plaintiffs must have standing in order for a court to have jurisdiction to render a declaratory judgment." *Connecticut Assn. of Boards of Education, Inc.* v. *Shedd*, 197 Conn. 554, 558, 499 A.2d 797 (1985). Our statutes enable judges of the Superior Court to implement a declaratory judgment procedure. General Statutes § 52-29. The purpose of a declaratory judgment action is to secure an adjudication of rights where there is a substantial question in dispute or a substantial uncertainty of legal relations between the parties. Practice Book § 390 (b); *Lipson* v. *Bennett*, 148 Conn. 385, 388, 171 A.2d 83 (1961). Although our state constitution contains no "case or controversy" requirement like that found in article three of the United States Constitution; *Flast* v. *Cohen*, supra, 95; our rules of practice provide that the court will not render a declaratory judgment on the complaint of a person "unless he has an interest, legal or equitable, by reason of danger of loss or of uncertainty as to his rights or other jural relations which requires settlement between the parties." Practice Book § 390 (a). As we have long recognized,

a person is not " 'entitled to set the machinery of the courts in operation except to obtain redress for an injury he has suffered or to prevent an injury he may suffer, either in an individual or representative capacity.' *Bassett* v. *Desmond*, [supra, 430]." (Emphasis added.) *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.*, 179 Conn. 541, 546, 427 A.2d 822 (1980); see *Belford* v. *New Haven*, 170 Conn. 46, 53, 364 A.2d 194 (1975).

In *Conn. Soc. of Architects, Inc.* v. *Bank Bldg. & Equipment Corporation*, 151 Conn. 68, 75–76, 193 A.2d 493 (1963), the plaintiff association was denied standing in part because it had no personal interest in the subject of the controversy and was, therefore, not a member of the class it purported to represent. The court concluded that a sufficient personal interest is " 'something more than is comprised in the most ardent wish or partial feeling. It implies a *right* in the subject of controversy, which a decree, more nearly or remotely, may affect.' *Crocker* v. *Higgins*, 7 Conn 342, 346 [1829]." (Emphasis in original.) Id., 74. "[N]o matter how zealous the plaintiff may be in its desire to assist its members, it cannot represent them to enforce their rights, unless it has a right, in itself, in the subject of the controversy which a decree will affect." Id.

Relying on *Conn. Soc. of Architects, Inc.*, the defendant claims that the association plaintiffs here lack standing to bring the declaratory judgment actions because they do not have individual interests in the actions separate from the health care providers who comprise their membership. We disagree with the views expressed in *Conn. Soc. of Architects, Inc.*, concerning the standing of an association to bring a suit in behalf of its members. In so doing, we adopt the federal standards for association standing that provide for efficient, expeditious and

vigorous resolution of controversies affecting similarly situated persons.[4]

In *Hunt* v. *Washington State Apple Advertising Commission,* 432 U.S. 333, 337, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977), a North Carolina statute requiring all closed containers of apples shipped into the state to bear the applicable United States grade was challenged by the Washington state apple advertising commission. The commission, an entity organized to protect and advance the interests of the Washington apple industry, petitioned for an exemption to allow the use of Washington state grades, which it claimed to be more stringent, on its apple containers. Id., 336–38. After its request for an exemption was refused the commission brought suit in federal court claiming that the statute violated the commerce clause of the United States constitution. Id., 339. The federal district court invali-

---

[4] The decision in *Conn. Soc. of Architects, Inc.* v. *Bank Bldg. & Equipment Corporation,* 151 Conn. 68, 193 A.2d 493 (1963), rested upon several grounds in addition to the insufficiency of representational standing: (1) that the purposes of the plaintiff association did not include enforcement of the architect licensing statute; (2) that available administrative remedies had not been exhausted; (3) that interested parties had not been notified of the declaratory judgment action; and (4) that a necessary party had not been joined as a defendant. We note that the principal case upon which *Conn. Soc. of Architects, Inc.,* relied, *New Jersey Bankers Assn.* v. *Van Riper,* 1 N.J. 193, 62 A.2d 677 (1948), has been explicitly overruled in *Crescent Park Tenants Assoc.* v. *Realty Equities Corporation of New York,* 58 N.J. 98, 275 A.2d 433 (1971). "We fail to see how justice or its sound administration can be said to have been at all furthered by *Bankers Association.* . . . [The decision] is incompatible with our current procedural philosophies . . . it has become a derelict in our law and is now expressly overruled." Id., 111. Association standing has also been consistently recognized by lower federal courts and many state courts. See, e.g., *Church of Scientology* v. *Cazares,* 638 F.2d 1272 (5th Cir. 1981); *Committee for Auto Responsibility* v. *Solomon,* 603 F.2d 992 (D.C. Cir. 1979); *National Treasury Employees Union* v. *Devine,* 577 F. Sup. 648 (D.C. 1983); *Florida Home Builders Assn.* v. *Dept. of Labor,* 412 So. 2d 351, 353 (Fla. 1982); *Aldridge* v. *Georgia Hospitality & Travel Assn.,* 251 Ga. 234, 304 S.E.2d 708 (1983); *Save a Valuable Environment* v. *Bothell,* 89 Wash. 2d 862, 576 P.2d 401 (1978).

dated the North Carolina statute. *Washington State Apple Advertising Commission* v. *Holshouser,* 408 F. Sup. 857 (E.D.N.C. 1976). On appeal before the United States Supreme Court, North Carolina challenged the standing of the commission to bring the action. *Hunt* v. *Washington State Apple Advertising Commission,* supra, 341–45. The Court affirmed the decision below and enunciated a three-part test that must be satisfied before an association will be granted standing to assert the rights of its members, without also asserting injury to itself. Id., 343.

"[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Id., 343; see *Simon* v. *Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 40, 96 S. Ct. 1917, 48 L. Ed. 2d 450 (1976); *California Bankers Assn.* v. *Shultz,* 416 U.S. 21, 94 S. Ct. 1494, 39 L. Ed. 2d 812 (1974); *Sierra Club* v. *Morton,* 405 U.S. 727, 739, 92 S. Ct. 1361, 31 L. Ed. 2d 636 (1972). Representational standing "depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Warth* v. *Seldin,* 422 U.S. 490, 515, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). "Associational standing is particularly appropriate . . . where the relief sought is . . . a declaratory judgment . . . ." *Peick* v. *Pension Benefit Guaranty Corporation,* 724 F.2d 1247, 1259 (7th Cir. 1983).

The plaintiffs clearly satisfy the three prerequisites for association standing as set forth in *Hunt.* The indi-

vidual members of each plaintiff association are health care providers who claim to have been adversely affected by the department's refusal to accept certain mentally ill patients. The members would, therefore, have standing to seek declaratory judgments because they allege direct, personal injury from the department's actions. The stated organizational purposes of the plaintiff associations, as set forth in their respective bylaws, include the promotion of sound state and federal laws for the welfare and benefit of health care facilities and the establishment and promotion of high quality and efficient patient care. The declaratory judgment actions are germane to this purpose because the relief requested will improve the quality and availability of health care services. Finally, neither the claim asserted nor the relief requested requires the participation of the individual members of either plaintiff association. The relief sought by the declaratory judgment actions will "inure to the benefit" of all members of both associations because it will alleviate the onerous burden of providing for committed patients placed in the member facilities. *Warth* v. *Seldin,* supra, 515. Because money damages are not sought for alleged injuries to the individual members, proof relating solely to the variant experiences of each health care provider resulting from the department policy at issue will not be necessary. See *Warth* v. *Seldin,* supra, 515–16; *Simer* v. *Rios,* 661 F.2d 655, 682 (7th Cir. 1981), cert. denied, 456 U.S. 917, 102 S. Ct. 1773, 72 L. Ed. 2d 177 (1982).

Certain policy reasons, not expressly embodied in the *Hunt* test, also favor recognition of association standing. Allowing associations to represent their members' interests in appropriate cases may promote judicial economy and efficiency. One plaintiff can, in a single lawsuit, adequately represent, and perhaps vindicate, the interests of many members, thus avoiding repeti-

tive and costly independent actions. "Permitting the association or organization to sue to protect the interests of its members avoids multiplicity of suits by similarly situated plaintiffs involving the same or similar causes of action and provides an efficient and expeditious method of adjudicating disputes." *Snyder* v. *Callaghan,* 284 S.E.2d 241, 251 (W. Va. 1981). Representational standing also allows the member health care facilities, that would have standing to initiate declaratory judgment actions in their own right, to pool their financial resources and legal expertise and, therefore, ensure full and vigorous litigation of the disputed issue.

The allegations in the plaintiffs' complaints are sufficient to confer standing.

There is error, the judgment in each case granting the defendant's motion to dismiss as to the named plaintiff is set aside and each case is remanded for further proceedings.

In this opinion the other judges concurred.