[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION MOTION TO STRIKE DOC. 107
In October of 1990, the plaintiff, David Morascini, sponsored a concert at his Stafford Springs, Connecticut night club which featured the controversial "rap" musical group "Two Live Crew." Under the purported authority of General Statutes 7-384[1] and without the plaintiffs' assent, officers of the Connecticut State Police assigned several police officers to the plaintiffs' premises on the night of the concert, and then billed the plaintiffs $1,991.74 for the officers' services. The plaintiff has brought this action against the Commissioner and the Deputy Commissioner of Public Safety and officers of the Connecticut State Police. The plaintiff is seeking a declaratory judgment stating that the bill is invalid and that the statute authorizing the bill, General Statutes 7-284, is invalid as it applies to activities protected by the First Amendment to the United States Constitution. The plaintiff claims that the statute on its face does not authorize defendants to charge the plaintiffs for providing police protection at a musical concert, and that if it does, then the statute is unconstitutional.
The defendants' motion to strike challenges paragraphs 1b, 1c and 3 of the plaintiff's prayer for relief. Paragraphs 1b and 1c request a judgment declaring that General Statutes7-284 is unconstitutional as applied to future concerts at plaintiff's nightclub and other locations, and that the statute does not apply to concerts and other events not specified within the language of the statute itself, which does not specifically mention "concerts." Paragraph 3 of the prayer for relief requests the court to permanently enjoin the defendants from requiring payment for the costs of police protection at future concerts or other events not specified in section 7-284
or which enjoy the protection of the first amendment to the United States and Connecticut Constitutions.
In their motion to strike, the defendants argue that the plaintiff lacks standing to challenge the applicability and the constitutional validity of the challenged statute to future CT Page 10766 happenings, and to events tagged by persons other than the plaintiff himself. The motion to strike is supported by a memorandum of law, and the plaintiff has filed a memorandum in opposition.
A motion to strike may be used to challenge a party's standing to bring an action before the court. Alarm Applications Co. v. Simsbury Volunteer Fire Co., 179 Conn. 541,545-46, 427 A.2d 822 (1980). In their memorandum in support of their motion to strike, the defendants cite Article III, 2 of the United States Constitution, which sets forth the "cases and controversies" requirement, and cases interpreting this clause as authority for the proposition that the plaintiff lacks standing to briny its claims. In his opposing memorandum, plaintiff joins the issue of whether he has standing under article III to bring his claims, stating that the defendant's memorandum contains the "implicit admission . . . that this federal civil rights action is controlled by federal rules of standing," citing Liner v. Jafco, Inc., 375 U.S. 301, 403,308-09 [84 S.Ct. 391, 11 L.Ed.2d 347] (1964).
The parties' reliance on the standing requirements of federal courts is misplaced, and that a party need not prove article III standing to bring suit in the Superior Court of the State of Connecticut. See Manchester Environmental Coalition v. Stockton, 184 Conn. 51, 65, 441 A.2d 68 (1981). While it is true that a plaintiff must have standing in order for a court to have jurisdiction to render a declaratory judgment, Connecticut Ass'n of Boards of Education v. Shedd, 197 Conn. 554,558, 499 A.2d 797 (1985), the source of that requirement comes from state law, not federal law, and is essentially a prudential doctrine. Manchester Environmental Coalition, supra. The federal standing requirement, while at least partially prudential, is a constitutional mandate through which the federal courts confine exercise of their jurisdiction to "cases and controversies." Those state courts that have followed federal decisions have done so not by constitutional mandate, but as a matter of state law jurisprudence. See Wright, Federal Courts 13 (4th ed. 1953).
The defendants cite Liner v. Jafco, Inc., supra, for the proposition that the federal rules of standing apply because this is a "federal civil rights action." The Liner case, however, does not support the proposition that a "federal" civil right action, wherever brought, may be brought only by a party whose standing would permit him or her to sue in federal court. Instead, the Liner case holds that a determination by a state court that a party does not meet its standing requirements does not deprive a federal court of jurisdiction to hear an appeal over which it could otherwise exercise CT Page 10767 appellate jurisdiction, Liner, supra, 308. In other words, the state grounds of standing, although "independent," were not sufficiently "adequate" to deprive the United States Supreme Court of jurisdiction to review a case where a party meets the federal standing requirement. See Michigan v. Long, 463 U.S. 1032,77 L.Ed.2d 1201, 103 S.Ct. 3469 (1982).
The rules governing standing to sue in federal court neither provide authority nor prevent a Connecticut court from hearing a case, and that the motion to strike should not be granted on this ground.
Although standing to sue is not controlled by the federal constitution and cases decided thereunder, the doctrine of standing under Connecticut law closely parallels its federal counterpart, and federal cases are often cited as persuasive authority. See Connecticut Ass'n of Health Care Facilities,199 Conn. 609, 612, 508 A.2d 743 (1986), citing e.g., Flast v. Cohen, 392 U.S. 83, S.Ct. 1942, 20 L.Ed.2d 947 F(1983); Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d (1962); Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333,97 S.Ct. 434, 53 L.Ed.2d 383 (1977), and others.
"The fundamental aspect of standing . . .[is that] it focuses on the party seeking to get his complaint before [the] court and not on the issues he seeks to have adjudicated." Connecticut Ass'n of Health Care Facilities, Inc. v. Worell, supra, 612, quoting Flast v. Cohen, supra, 99. The requirements of standing are ordinarily held to have been met "when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer." Conn. Ass'n of Health Care Facilities, supra, 613.
Practice Book 390(a) provides that a court will not render a declaratory judgment on the complaint of a person "unless he has an interest, legal or equitable, by reason of danger or loss or of uncertainty as to the rights or other jural relations which requires settlement between the parties." Conn. Ass'n of Health Care Facilities, supra 613. In addition to a legally cognizable claim, a party must "demonstrate a legal interest in the subject matter of a controversy that can be distinguished from the interest of the general public." Connecticut Business Industry Ass'n, Inc. (CBIA) v. CHHC,218 Conn. 335, 589 A.2d 356 (1991).
In support of his contention that he has standing to bring his claims for declaratory and injunctive relief, the plaintiff has alleged that as a result of the defendants' application and enforcement of General Statutes 7-284, he is unwilling to book controversial musical performances at his CT Page 10768 nightclub in the future. The instant motion, being a motion to strike, admits all facts well-pleaded. Mingachos v. CBS Inc.,196 Conn. 91, 188-89 A.2d (1985). Thus, the ultimate issue in this case is whether the plaintiff has alleged facts which demonstrate the existence of a legally cognizable injury, distinguishable from that suffered by the public at large, sufficient to support his standing to bring this declaratory judgment action.
The plaintiff has satisfied this requirement. First, the plaintiff has alleged that he is no longer willing to book controversial performers at his nightclub as a result of the defendants' actions under General Statutes 7-284. Since the plaintiff's business is based on the promotion of musical performances, which are allegedly protected by theFirst Amendment, the plaintiff has alleged "danger of loss" sufficient to satisfy the standing requirement created by Practice Book 390(a) and Connecticut Ass'n of Health Care Facilities, supra. Second, the plaintiff's allegations state a colorable claim of First Amendment "chill" insofar as the plaintiff has professed an unwillingness to book controversial performers at his nightclub in the future.
This "chill" creates sufficient "uncertainty as to his legal rights" to require settlement as between the parties, and that this claim alleges a sufficient violation of his constitutional rights to satisfy this state's standing requirement. See Invisible Empire Heights of the Ku Klux Klan v. City of West Haven, 600 F. Sup. 1427 D. Conn. 1985) (recognizing standing, declaring ordinances permitting provision of police protection invalid).
The defendant also challenges the plaintiff's right to have the statute as it applies to parties other than the plaintiff declared unconstitutional. Insofar as the requested judgment seeks to invalidate the statute as applied to others, the plaintiff may be required to assert "third party" standing. "Litigants are sometimes allowed to challenge the validity of laws on First Amendment grounds where the law would be invalid as applied to others even if the law is constitutional as applied to the litigant." Husti v. Zuckerman Property Enterprises, Inc., 199 Conn. 575, 587. 508 A.2d 735 (1986). A party has standing to bring a First Amendment challenge to a statute on behalf of others "only if there is a realistic danger that the statute will significantly compromise recognized First Amendment protections not before the [c]ourt." Husti, supra, 587.
The First Amendment rights asserted are sufficiently important and the danger of their infringement sufficiently CT Page 10769 great to confer upon plaintiff third-party standing. First, the plaintiff's right to challenge the statute as it has already been applied is not in dispute. Similarly, the plaintiff has standing to challenge the statute as it would apply to him in the future. Since the first amendment rights of others who are affected by General Statutes 7-284 are similar or identical to those of the plaintiff, the plaintiff will "properly . . . frame the issues and present them with the necessary adversary zeal," Secretary of State of Maryland v. J. H. Munson Co., 467 U.S. 947 S.Ct. L.Ed.2d 756,104 S.Ct. 2820 (1984), needed to satisfy one of the primary prudential considerations underlying the standing doctrine.
Second, because the rights of others engaging in activities protected by the first amendment are identical to the plaintiff's own, judicial economy recommends standing, with the caveat that in deciding on the merits the court might decline to exercise this authority.
Third, third party standing in first amendment cases has been broadly construed by both state and federal courts because of the danger that "persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal [in this case, civil] sanctions provided by a statute susceptible of application to protected expression." Husti, supra, 587, citations omitted. The danger of first amendment "chill" being asserted in this case may be properly raised by this plaintiff because of the difficulty that future plaintiffs might meet when challenging the statute. Concert promoters and nightclub owners might find that no single event or concert "warrants a protracted and onerous course of litigation," Freedman v. Maryland, 380 U.S. 51,59, 13 L.Ed.2d 641, 85 S.Ct. 769 (1965), and might therefore decline to press their First Amendment rights, choosing instead to refrain from the protected activity.
Finally, declaratory judgments presenting challenges to the applicability and constitutionality of a statute have been upheld despite the fact that the declaratory judgment will affect parties other than those before the court. See, e.g., Ku Klux Klan v. City of W. Haven, supra (challenging the provision of and request of payment for protective services at an event protected by the first amendment); Rhodes v. Hartford,201 Conn. 89, 913 A.2d 124 (1986) (challenging the applicability of pawnbroker statute); Aaron v. Conservation Commission, 178 Conn. 173, 422 A.2d 290 (1979) (challenging inland wetlands regulations).
The defendant's motion to strike is premised on the grounds that the plaintiff lacks standing to obtain the relief CT Page 10770 requested in paragraphs 1(b), 1(c) and 3 of his prayer for relief. The plaintiff satisfies all applicable standing requirements. The motion to strike is denied.
JOHN WALSH, J.