[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS
On March 19, 1991, the defendant Planning Zoning CT Page 2847 Commission of the Town of Manchester (Commission) approved the application of defendant Downeast Associates Limited Partnership (Downeast) for a special exception and site plan approval to build a shopping center in Manchester. Plaintiffs Buckland Neighborhood Committee (BNC), Elaine and Raymond Smith, and Margeret Molloy appealed the Commission's decision to this court pursuant to General Statutes 8-8. Subsequently, plaintiff Margaret Molloy withdrew her appeal. The defendants move to dismiss the appeal on the grounds that the remaining plaintiffs lack standing and are not aggrieved. The court finds the issues in favor of the defendants.
The court held a hearing on the defendants' motion. Pursuant to General Statutes 8-8(j), the plaintiffs assumed the burden of proving aggrievement.
All of the plaintiffs concede that they do not own land that abuts or is within a radius of one hundred feet of the land which is the subject of the appeal. They claim, however, that they are "classically" aggrieved under the familiar rule set forth in Hughes v. Town Planning Zoning Commission, 156 Conn. 505
(1968) and numerous other cases. Hughes holds that in order to establish the necessary aggrievement, an appellant must prove that he or she "had a specific, personal and legal interest in the subject matter of the decision as distinguished from a general interest such as is the concern of all members of the community and that (he or she was) specially and injuriously affected in their property or other legal rights." Id., 507-508, citations omitted. Such aggrievement is a jurisdictional prerequisite to maintaining the appeal. General Statutes 8-8(b); Bakelaar v. West Haven, 193 Conn. 59, 65
(1984). "Aggrievement is established if `there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected.'" Hall v. Planning Commission, 181 Conn. 442, 445 (1980). On the other hand, "mere generalizations and fears . . . do not establish aggrievement." Walls v. Planning Commission, 176 Conn. 475, 478
(1979).
At the outset, the defendants contend that BNC has no standing to appear in a representative capacity in this appeal. Testimony of Mr. and Mrs. Smith and another neighbor established that BNC is the name given to the informal association of some CT Page 2848 of the approximately sixty-five families residing in the Croft Drive neighborhood, southwest of the proposed shopping center. Some of these neighbors formed a committee in the 1970's to oppose another commercial development, but thereafter it remained completely inactive until the Commission began to consider Downeast's application in this case. Some of these neighbors then assembled again. The BNC owns no real property and has no office or mailing address. There are no regular meetings; there are no by-laws, rules or constitution; and there are no officers. The actual membership is likewise problematic. The testimony indicated that all of the neighbors were eligible to join, but there was no evidence indicating who had done so, other than those testifying. The BNC has no membership dues, but some of the organizers collected contributions from some of the neighbors and opened a savings account in BNC's name. The money was used to pay the plaintiffs' legal fees in this case. Members of the BNC attended all public meetings and hearings held in connection with Downeast's application and spoke in opposition.
In Connecticut Association of Health Care Facilities, Inc. v. Worrell, 199 Conn. 609, 616 (1986), the court held that "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in heir own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted or the relief requested requires the participation of individual members in the lawsuit." In Rankl et al v. Zoning Commission of the Town of Marlborough, No. CV84-0289971 (Hartford J.D., October 18, 1985, Aronson, J.) the court held that a voluntary association, such as BNC in this case, which cannot legally own real property, has no standing to sue because it cannot show any injury to itself.
Under the standard enunciated in Worrell, supra, 616, the court concludes that BNC lacks standing to represent individual property owners in this appeal. There was insufficient evidence to establish BNC's purpose or even its existence as an organization of the kind considered by the supreme court in Worrell. Specifically, the organization has no by-laws or other manifestation of purpose or function. The testimony of the Smiths and Mr. James revealed that the association lacks continuity, organization, and structure. It is essentially a loose, informal, unstructured assemblage of some residents of Manchester who are opposed to Downeast's shopping center proposal.
Furthermore, this is not a case where the rights of all of the members of an association are identically injured by an agency's ruling. See Worrell, supra, where each member of the CT Page 2849 plaintiff organization would have been similarly aggrieved by the agency's action. In this case, each neighbor member of BNC would be required to demonstrate his or her individual aggrievement, based on his or her individual real property ownership. Therefore, all of BNC's members for whom BNC proposes to speak, would be required to participate in the appeal to establish their individual aggrievement. See Worrell, supra, 616 (for association to have standing, action cannot require participation of individual members).
Also, under the reasoning of Rankl, supra, since BNC itself owns no property, it cannot establish aggrievement itself.
For all of these reasons, the court holds that BNC lacks standing to bring this appeal as an entity seeking to protect its own interests or in a representative capacity seeking to I protect the interests of its members.
The remaining plaintiffs are Mr. and Mrs. Smith. In their complaint, they allege that they are aggrieved by the Commission's decision because the proposed shopping center would adversely affect their property rights in the following ways:
 1. Drainage from the shopping center's parking lot will flood their property.
 2. Development and use of the shopping center will cause an increase in traffic "in the streets in which (they) live."
 3. Development and use of the shopping center "will adversely affect the value of (their) property."
In support of their allegations, Mr. and Mrs. Smith testified and introduced maps and photographs. Their evidence established that their house is three hundred and thirty-seven feet from the boundary of the property where the shopping center would be located. From their house, the parking lot of the center would be visible, especially in the winter. Between the street on which their house is located, Windsor Street, and the shopping center property is a large man-made pond, which was installed to collect drainage from other commercial property and control the runoff of that water into a nearby river. The shopping center property is located on Pleasant Valley Road, which runs parallel to Windsor Street, on the opposite side of the pond. Windsor Street is connected to Pleasant Valley Road by Croft Drive, which provides the only outlet for all of the houses on Windsor Street. In effect, the Smiths' house is in a large cul-de-sac. The scene is accurately depicted in CT Page 2850 Plaintiff's Exhibit No. 2, which is attached as an exhibit hereto.
Mr. and Mrs. Smith testified that they believe that drainage from the shopping center parking lot would cause the pond to overflow and flood their property. They introduced photographs showing the pond at a high level on August 19, 1991, in support of their claim. Neither of the Smiths has had any formal education or training in engineering or water drainage control. In opposition to this claim, the defendant introduced the testimony of an expert witness along with some topographical drawings. This evidence tended to show that the pond is of sufficient size and design so that any additional drainage from the shopping center will not "exceed the design capacity"; that is, it would not flood the Smiths' property. The court finds this evidence convincing. The court further concludes that the Smiths' concerns are essentially unsubstantiated fears and apprehensions. As such, they do not establish aggrievement. Walls v. Planning Commission, supra.
With respect to increased traffic congestion, the Smiths' evidence again consisted of their unsupported opinions. In opposition, the defendants produced an expert witness who testified that there would be a slight increase in traffic at the intersection of Pleasant Valley Road and Croft Drive during the evening "rush hour," but the increase would not be enough to change the traffic classification or grading of that intersection. The primary basis of his opinion was that Croft Drive is located beyond the entrance to the shopping center that would service most of the center's customers. He testified further that because the Smiths live in a cul-de-sac, there would be no increase in the traffic on their own street. Weighing this evidence, the court concludes that the Smiths' concerns in regard to traffic congestion are unsubstantiated, subjective fears and do not, for that reason, establish aggrievement.
With respect to the claimed adverse effect on the value of their property, the Smiths testified that they believe that lights to be installed in the shopping center parking lot will shine in their windows and disturb their sleep. They also testified that they believe that the slamming of car doors in the lot will disturb them. Mr. Smith testified that the center would "probably" have a "negative effect" on the value of his house. Mrs. Smith testified that, in her opinion, shopping centers and malls have a bad effect on surrounding neighborhoods because undesirable people often congregate in them. They offered no other evidence to support their claims concerning the effect of the center on the value of their house; in particular, the court notes that they did not offer testimony or a report of CT Page 2851 an appraiser in support of this claim. See Sachem's Head Association v. Lufkin, 168 Conn. 365 (1975).
[EDITORS' NOTE: THE DIAGRAM OF THE SHOPPING CENTER IS ELECTRONICALLY NON-TRANSFERRABLE.]
In opposition to the plaintiffs' claims regarding the value of their property, the defendants produced a witness who was in charge of lighting design for the shopping center parking lot. He testified that the height and placement of the' light poles are designed so that no light from them will "spill offsite." Weighing all of the evidence on this claim, the court concludes that the Smiths have not established that the shopping center will have a negative effect on the value of their property. Rather, the court finds that their claims in this regard are only generalizations and fears and, for that reason, not a basis for finding the Smiths to be aggrieved by the Commission's decision.
In summary, the court finds, on the basis of evidence adduced at the hearing on this motion, that the plaintiffs have not sustained their burden of proving they are aggrieved by the Commission's decision. Accordingly, the defendants' motion to dismiss is granted.
MALONEY, JUDGE