[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this matter the plaintiffs appeal from a final decision of the defendant Department of Public Utility Control ("DPUC"). That ruling reversed the decision of the Stamford Zoning Board ("Board") denying the application of the Stamford Water Company ("SWC") to site a one million gallon water tank ("Proposed Tank") in a residential neighborhood in Stamford, Connecticut.
The plaintiffs are the City of Stamford; the Stamford Zoning Board; Ronald L. Freedman, whose property abuts the site originally proposed for the tank; and the Committee to Preserve the Roxbury Neighborhood ("CPRN"), an association of neighbors owning property in close proximity to the proposed tank sites. They raise three issues in this appeal. First, they allege that the DPUC violated C.G.S. § 16-235 by approving a site location which had not been subject to prior consideration by the Stamford Zoning Board. Second, the plaintiffs argue that the DPUC improperly concluded that the Board failed to understand its role as an agent of the state when reviewing Stamford Water Company's application. Finally, the plaintiffs argue that the DPUC violated their due process rights as intervenors by precluding them from fully participating in certain aspects of the hearing before the DPUC.
Because me DPUC erred in approving a site not submitted to CT Page 5520 the Stamford Zoning Board, the plaintiffs' appeal is sustained and the matter is remanded to the DPUC.
 I.
The essential facts giving rise to this appeal are not disputed. On June 17, 1992 the Stamford Water Company applied to the Stamford Zoning Board, pursuant to C.G.S. § 16-235, for approval of a site plan to construct a water tank on SWC owned property on Roxbury Road in Stamford. The tank, according to the SWC, would alleviate water pressure problems in the neighborhood and would also address fire safety issues created by an inadequate supply of water that part of Stamford.
Prior to me commencement of me hearing me Assistant Corporation Counsel for the City of Stamford provided the Stamford Zoning Board with a detailed memorandum outlining the Board's role and responsibility with respect to the application. He specifically noted that pursuant to General Statutes § 16-235 the Board was acting as a state agency in its consideration of SWC's request, and was required, under applicable Supreme Court precedent, to "weigh the considerations of public convenience, necessity and safety against those of the property values and safety and welfare of the local residents directly impacted."
The Zoning Board conducted a public hearing on SWC's application. With the exception of a brief reference to a possible alternate site for the tank, the Zoning Board considered SWC's application only insofar as it referenced the particular site identified in the formal application. The Board thereafter denied SWC's application, citing seven reasons, some of which, broadly speaking, involved traditional zoning concerns such as location and size of the tank and its effect on development and character of the neighborhood. The Board also explicitly found that "public necessity would not be served by an above ground water storage tank at the Proposed Site."
On September 17, 1992, SWC appealed to the DPUC pursuant to C.G.S. § 16-235. Prior to the commencement of the hearing, the DPUC precluded the plaintiffs from any inquiry by discovery or at the hearing into "whether or not SWC is in need of additional domestic or fire flows, or whether those flows should be provided by the installation of an additional storage facility." After extensive hearings and site visits the DPUC CT Page 5521 issued its final ruling, revoking the Stamford Zoning Board's decision denying SWC's application, and granting permission to SWC to site the proposed tank on one of two alternative sites. The first site was the one originally presented to the Stamford Zoning Board. The alternative site, which is adjacent to the proposed site and owned by the State Department of Transportation, was never formally submitted to the Zoning Board. The DPUC nevertheless approved it, concluding that it would be more palatable to neighborhood critics of the tank. On December 21, 1993 the plaintiffs filed this appeal of the DPUC decision.
 II.
The standards governing review of administrative decisions are well established. The right to appeal an administrative decision is created by statute and is governed by the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq. "The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in the abuse of [its] discretion. NewHaven v. Freedom of Information Commission, 205 Conn. 767, 772
(1988). "A court may not reverse or modify an agency decision unless it determines that appellant's substantial rights . . . have been prejudiced because the agency's findings, inferences, conclusions or decisions contravene one of the sections six specific provisions." Connecticut Building Wrecking Co. v.Carrothers, 218 Conn. 580, 583 (1991).
With regard to questions of fact, "judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred." Schallenkamp v. DelPonte, 229 Conn. 31, 40
(1994) (internal quotations and citations omitted). "It is not the function of the trial court . . . to retry the cause . . . [T]he determination of issues of fact are matters within its province [of the administrative agency]." Tomlinson v. Board of Education,226 Conn. 704, 713 (1993).
 III
The test for determining aggrievement is a two part inquiry. CT Page 5522 "First, the party claiming aggrievement must demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that the specific, personal and legal interest has been specially and injuriously affected by the decision." Walls v.Planning Zoning Commission, 176 Conn. 475, 477-478 (1979).
The Connecticut Supreme Court set forth the test for aggrievement with respect to associational standing inConnecticut Association of Health Care Facilities v. Worrell,199 Conn. 609, 614 (1986). An association has standing to bring suit on behalf of its members when (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Id., at 616.
In this matter both Mr. Freedman, as an owner of abutting land, and CPRN, as an association of abutting and nearby property owners, meet the test for aggrievement.
 IV.
Plaintiffs first claim that the DPUC, conducting a de novo review of the Zoning Board's decision, improperly approved a site not subject to prior consideration by the Zoning Board. As previously noted, in the original application filed with the Zoning Board, the SWC identified as the proposed site for the tank a company owned property on Roxbury Road. In ruling on the SWC appeal from the denial of that original application, the DPUC approved as an alternative site, a parcel adjacent to the one originally proposed by the SWC in its initial application to the Zoning Board. The alternative site was neither formally submitted to nor considered by the Zoning Board.
The plaintiffs claim that the decision to approve the alternative site violates the express language and purpose of § 16-235. Specifically, they allege that § 16-235
prohibits the DPUC from approving a site location unless that site has been approved and reviewed by the local zoning board. Relying on the language of § 16-235 that authorizes the DPUC to "modify, or revoke such orders or make any orders in CT Page 5523 substitution thereof", the defendants argue that § 16-235
confers broad authority on the DPUC, after a de novo review, to enter such orders as deems appropriate.
C.G.S. § 16-235 provides in relevant part that:
Control by local authorities. Orders. Appeals
 Except as provided in section 16-243, the selectmen of any town, the common council of any city and the warden and burgesses of any borough shall, subject to the provisions of section 16-234, within their respective jurisdictions, have full direction and control over the placing, erection and maintenance of any such wires, conductors, fixtures, structures or apparatus, including the relocation or removal of the same and the power of designating the kind, quality and finish thereof. . . .
 and shall have jurisdiction to affirm, or modify or revoke such orders or make any orders in substitution thereof."
This court's inquiry must begin with whether C.G.S. § 16-235, properly construed, supports the DPUC's position that its authority to "modify" orders of the local Zoning Commission or to "make any orders in substitution thereof" extends to approval of sites not considered by the Stamford Zoning Board.
We approach this question according to well established principles of statutory construction designed to further our fundamental objective: "In construing a statute, we seek to ascertain and give effect to the apparent intent of the legislature." Villaincourt v. New Britain Machine/Litton,224 Conn. 382, 390 (1993) as cited in West Hartford Interfaithv. Town Council, 228 Conn. 498, 507 (1994). "In seeking to discern that intent we look to the words of the statute itself, to the legislative history and circumstances surrounding the enactment, to the legislative policy it was designed to implement and to its relationship to existing legislation." State v. McVeigh,224 Conn. 593, 607 (1993).
We start with the language employed by the legislature. Generally, "when the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." West Hartford Interfaith v. Town Council, supra, 508. Further we must interpret the statute according to its plain and CT Page 5524 ordinary meaning. "When the language of a statute is unclear, [however], we may ascertain the intent of the legislature by looking beyond the language to the statute's legislative history and the purpose that the statute was intended to serve. A statute should not be interpreted to thwart its purpose." Id.
Applying these principles to our interpretation of C.G.S. § 16-235, the question is whether the word "modify" and the phrase "make any order in substitution thereof" authorize the DPUC to approve the alternate site. The plain and ordinary meaning of "modify" is to "moderate, to make more temperate and less extreme, or to make minor changes in the form or structure, to alter without transforming". Webster, New International Dictionary, 6th ed. Black's Law Dictionary, 6th ed. adds that in a quantitative sense the change may be characterized as either an increase or a decrease.
These definitions indicate that the DPUC's authority to "modify" a decision presupposes that the essential decision remains intact and does not extend to changes that would constitute a substantial alteration of the decision. From this perspective, then, the word "modify", as used in § 16-235, cannot be construed to permit the approval of a site not the subject of the zoning authority's order.
More difficult however, is the defendants' claim that the DPUC's authority to make orders in "substitution" of local orders justifies its decision to approve the alternate site. The word "substitution" derives from the verb "substitute". Webster defines "substitute" as "to put in the place of another, to exchange". Under this definition it would appear that General Statutes § 16-235 does confer broad authority on the DPUC to substitute its decision for that of the local zoning board. The plaintiffs, however, suggest that a literal reading of "substitute" yields an illogical and bizarre result that is inconsistent with the purpose of § 16-235, which is to strike the proper balance between local zoning concerns and public necessity and convenience. Jennings v. Connecticut Light PowerCo., 140 Conn. 650, 663 (1954). Because the purpose of statutory construction is to avoid bizarre and illogical results; BuildersService Corporation v. Planning Zoning Commission, 208 Conn. 267
(1988); it is appropriate to examine the purpose of § 16-235 to determine whether the legislature intended, as the defendants argue, that the DPUC have the authority to select a site not previously considered by the local zoning board. CT Page 5525
In Jennings v. Connecticut Light and Power Co, supra, the Supreme Court considered the role of the local zoning board when considering an application for the siting of a public utility under the predecessor statute of § 16-235. In Jennings the Court ruled that the legislature intended to impose on utilities the obligation to first apply to the local zoning board when seeking approval for a utility facility. It noted that the predecessor to § 16-235 was amended to specifically confer on local zoning boards the authority to regulate and restrict the proposed location of water tanks and certain other facilities whether or not such facilities were located on private property.Id., 664-65.
After an exhaustive review of the purpose of § 16-235 and related statutes, the Jennings Court concluded that the legislature intended to create a framework for the review of the siting of utility facilities that included local review as the first, but not the only step of that process. More specifically, the Court determined that a local zoning board acts as an agent of the state when reviewing utility applications under § 16-235, and exercises its authority over the location of a public utility facility as a matter of public utility regulation rather than merely zoning. "It is the function of the zoning commission, in passing upon an application for approval . . . to weigh the considerations of public convenience, necessity and safety which may argue for approval against the considerations of public zoning. The standards which must guide the zoning commission, therefore, are a combination of the standards of public convenience necessity and those of public health, safety and welfare and the stabilization of property values." Id., 670.
Under the Jennings framework the legislature has accommodated the local zoning concerns and the statewide power of utility regulation. Significantly, the Jennings decision recognized that while public necessity and convenience must be the ultimate concern of the decision making body, the local zoning interests must be given appropriate consideration and deference. This conclusion is bolstered by the requirement of § 16-235 that in the first instance a utility must apply to the local zoning board for permission to cite a facility. It follows, therefore, that it is inconsistent with the statutory scheme and legislative purpose of § 16-235 to permit the DPUC to approve a utility facility site that has not previously been the subject of local zoning board review and consideration. While Jennings indicates CT Page 5526 that the local zoning board is to assume the mantle of the DPUC, the reverse is not also true. The DPUC does not sit as a local zoning board. To hold otherwise would create the possibility that the DPUC has plenary authority to site a utility facility in any location in any community without prior consideration by the locality. While the DPUC may have the authority, after a de novo review, to make orders in substitution of those issued by the local zoning board, that authority is not without limits. Those limits are defined by the legislative purpose of § 16-235, which is to strike the proper balance between public convenience and necessity, on the one hand, and public safety and welfare, on the other. That balance is not achieved if the DPUC is given plenary authority to approve a site location not subject to prior review by the local zoning board. Accordingly, it was error for the DPUC to approve, conditionally or otherwise, the alternate site for the proposed water tank in the absence of prior Zoning Board consideration of that site.
 V
The second argument of the plaintiffs is that the DPUC erred by concluding that the Stamford Zoning Board misunderstood its role as an agent of the state under C.G.S. § 16-235. Specifically, the plaintiff claims that the DPUC erroneously determined that the Board did not understand that it was required to consider public necessity and convenience in its review of the application. (Decision p. 20, 34).
The plaintiffs' argument arises in the following context. In evaluating whether the Board properly balanced the impact on the community with the welfare of the state, the DPUC in its November 10, 1993 decision summarized the basis for the Board's denial. The DPUC noted that in its decision the Board concluded that (1) the Water Company did not establish a public convenience and necessity; (2) the evidence presented did not demonstrate the need for additional water storage; (3) the Company's need for a water tank was not urgent; and (4) the Stamford Zoning regulations prohibit the construction of the proposed tank. Based on these factors the DPUC concluded that the "Zoning Board failed to understand that it was acting as an agent for the State and that it could approve the application despite the fact that it would contravene local zoning laws." Decision, Nov. 10, 1993,p. 20. The plaintiffs' challenge that finding, arguing that it fatally infected the DPUC's decision to revoke the Board's denial of Company's application. CT Page 5527
Two issues are raised by plaintiff's argument. The first is whether the DPUC erred in finding that the Board did not understand that it could approve the Company's application even if the siting of the tank violated local zoning law. The second is whether such error, if demonstrated, requires reversal of the DPUC decision. Although the DPUC's conclusion that the Board failed to understand its role as an agent of the state is not supported by substantial evidence; Schallenkamp v. DelPonte, supra, 229 Conn. 40; such error is harmless in light of the DPUC's de novo review of the Company's application, and its independent determination that public necessity and convenience requires the siting of the water tank in the Roxbury neighborhood.
A review of the record demonstrates that the Board was fully informed of and understood its role as an agent of the state. Stamford's Assistant Corporation Counsel advised the Board that while Stamford's zoning regulations do not permit a water tank in a RA-1 zoning district, § 16-235 required that the Board act as an agent of the State. (R/R Ex. I.2). Specifically, the Corporation Counsel advised the Board that the "[f]act that the Zoning Regulations prohibit a water tank does not prevent the Zoning Board from making a decision to deny, or grant with conditions the application, since the Zoning Board is acting as a state agency."
The defendants have not pointed to any fact indicating that the Board did not fully understand and act in accordance with the Corporations Counsel's legally accurate instructions. The Board's observation, in its denial of the Company's application, that it was a violation of local zoning law to approve the tank, is likewise accurate. Fairly construed, that conclusion must be considered as but one factor the Board considered and identified in balancing public convenience and necessity against local health and welfare. There is nothing in the record, in short, to support the DPUC's finding that because the Board concluded that local zoning prohibits the siting of the tank, the Board did not properly understand its role pursuant to General Statutes § 16-235. Indeed, the reasons assigned by the DPUC for reversing the Board; Decision at 20; reflect that the DPUC disagreed with the Board's weighing of the evidence and the balance it struck as between local zoning and public necessity ("The Board failed to give adequate weight to the evidence . . . failed to give adequate weight to the staff report . . . relied on the testimony CT Page 5528 from a witness who was not qualified), not that the Board failed to understand its obligation under Jennings.
Although the DPUC's finding that the Board did not understand its role as an agent of the state is not supported by substantial evidence; Schallenkamp v. DelPonte, supra, it is nevertheless harmless error. Pursuant to General Statutes § 16-235 the DPUC conducted a de novo review of the Company's application and the Board's denial of it. On appeal to this court, it is the DPUC's decision granting the application that is subject to review, not the DPUC's evaluation of the Zoning Board's decision. In this appeal the plaintiffs do not challenge the DPUC's approval of the Company's application. Accordingly, while the DPUC erred in concluding that the Board failed to understand its role as an agent of the state, such error is harmless in light of the DPUC's independent review and consideration of the application itself.
Further, a review of the record and Decision reflects that the DPUC's erroneous finding was but one of many which faulted the Board's decision. Had the DPUC properly concluded that the Board understood its role, it is clear that the DPUC would have nevertheless revoked the Board's order based on the multiple other grounds it assigned for vacating the Board's decision and considering the Company's application de novo. Thus, although the plaintiffs argue that the DPUC's erroneous finding infected the DPUC's decision making process to the extent that a remand is required, a review of the Decision and record indicate that the DPUC cited numerous other, independent grounds for its decision to revoke the Board's ruling.
 VI.
The third argument raised by the plaintiffs is that they were denied their right to procedural due process, pursuant to General Statutes § 4-177a, as a result of the defendants' refusal to permit them from making inquiry into and presenting evidence on the question of the Water Company's claimed need for additional water. The plaintiffs were granted intervenor, not party status, and pursuant to General Statutes § 4-177a(d) the agency limited their participation at the hearing.
General Statutes § 4-177a(d) defines the scope of participation by an intervenor: CT Page 5529
 If a petition is granted pursuant to subsection (b) of this section, the presiding officer may limit the intervenor's participation to designated issues in which the intervenor has a particular interest . . . The presiding officer may further restrict the participation of an intervenor in the proceedings, including the rights to inspect and copy records, to introduce evidence and to cross-examine, so as to promote the orderly conduct of the proceedings.
General Statutes § 4-177a(d) grants the defendant substantial discretion to limit an intervenor's participation in the agency proceeding. Absent a showing that the agency abused its discretion in limiting the participation of the intervenor-plaintiffs, its decision will not be disturbed. GriffinHospital v. Commission on Hospitals Health Care, 200 Conn. 489
(1986). The plaintiffs have not alleged any facts demonstrating that the defendant abused its discretion by limiting the plaintiffs' participation. While the need for additional water in plaintiffs' neighborhood was clearly a material element of the parties' dispute, the refusal of the defendant to permit the plaintiffs to participate in this aspect of the dispute was not an abuse of its discretion in view of the substantial evidence presented on this question. Because the plaintiffs have not identified how the evidence received by the agency would have differed or how its decision would have been altered had the plaintiffs been granted greater participation in the proceedings, it cannot be said that the defendant abused its discretion by limiting the plaintiffs' participation.
Accordingly, for the foregoing reasons, the plaintiffs' appeal is sustained and the matter is remanded to the Department of Public Utility Control.
SO ORDERED.
Robert L. Holzberg, J.