[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR CLASS CERTIFICATION
The plaintiffs, all of whom are individual physicians or group practices of physicians practicing orthopedic surgery, allege that they are parties to contracts with the defendant regarding provision of medical services to the defendant's subscribers and that the defendant has breached various obligations to them. They have moved for certification of a class to pursue the claims made in their amended complaint. In their motion, the plaintiffs proposed a class "to include CT Page 9415 all those providers, doctors and physicians who have signed with the defendant a Participating Physician Agreement, a participating Physician Group Agreement, Participating Provider Agreement or Participating Provider Group Agreement." In the text of their motion, the plaintiffs proposed no limitation on the date of signing such contracts. At the hearing the plaintiffs stated that they propose that a class be certified consisting of those who signed such agreements from 1993 to the present.
In their brief in support of the motion for class certification, the plaintiffs noted at page 4 that they seek to exclude from the class the Greater Waterbury Hospital Network and "so-called "risk-sharing' arrangements" as well as preferred provider organizations under the Century 2000 plan and Constitution CHCP.
At the hearing, the plaintiffs stated further amendments to the proposed class. They propose that the class include only physicians, not social workers or other providers who are not medical doctors. At oral argument they stated that they do not seek to represent a class as to two of the claims of breach of contract made in the amended complaint, namely, the claims made at paragraph 20(h) ("failing to properly and adequately maintain a Member Identification System, such that the Plaintiffs and other similarly situated physicians can obtain eligibility and general coverage information in a timely fashion") and at paragraph 20(k) ("failing to maintain and communicate, fair and adequate procedures for the appeal of audit decisions").
Though all of the named plaintiffs are orthopedic surgeons, they seek to represent a class that includes physicians engaged in other specialties and in general practice.
Claims Made
It is useful to set forth the claims alleged in the amended complaint as the framework for assessing whether to certify a class to pursue those claims.
In the First Count, plaintiffs Connecticut Family Orthopedics, P.C., Hartford Orthopedic Surgeons, P.C., Connecticut Sports Medicine 
Orthopedic Center, P.C., Orthopaedic Surgery, P.C., Michael Connair, and Joseph Zeppieri allege that the defendant breached its agreements with them in the following ways:[1]
 (a) Failing to pay for services in a timely and adequate way;
 (b) Failing to provide the Plaintiff and other CT Page 9416 similarly situated physicians with a consistent medical utilization/quality management and administration of covered services by paying financial incentive and performance bonuses to providers and Anthem BC BS staff members involved in making utilization management decisions;
 (c) Failing to adequately communicate the Administrative Policies and Procedures to the Plaintiffs and other similarly situated physicians;
 (d) Failing to pay the Plaintiffs and other similarly situated physicians in accordance with the terms of the Agreements;
(e) Arbitrarily denying payment for service;
 (f) Failing to observe consistent standards of recognition and implementation of medically necessary services;
 (g) Failing to maintain accurate books and records whereby improper payments to the Plaintiffs were made based on claim codes submitted;
 (i) Failing to implement and/or maintain, and/or communicate to the Plaintiffs, and other similarly situated physicians, a fair and adequate procedure for the appeal of utilization/quality management decisions and payment decisions;
 (j) By making payment for services dependent on profiling, a practice whereby treatment and/or payment for covered services for the patient is permitted/disallowed in whole or part by the use of statistical averages for the treating physician.
Additional breach of contract allegations are made by plaintiffs Edward Collins, Michael Connair, Scott Gray, Ronald Ripps, John J. O'Brien, Joseph Zeppieri, Kristaps J. Keggi, John M. Keggi, Connecticut Family Orthopedics, P.C., Hartford Orthopedic Surgeons, P.C., Connecticut Sports Medicine Orthopaedic Center, P.C., and Orthopedic Surgery, P.C. These plaintiffs allege that the defendant breached its contracts with them in the following ways:[2]
 (1) By arbitrarily and capriciously amending the CT Page 9417 Agreement upon information and belief on effective date April 1, 1996, effective date September 30, 1996, effective date January 15, 1997, effective date May 1, 1997, effective date October 1, 1997, effective date January 1, 1998, effective date August 1, 1998, effective date January 1, 1999, effective date August 1, 1999, effective date January 1, 2000, without a fair and adequate method to challenge the amendment on the facts and/or allegations that AHP believes supported that amendment.
 (m) By failing to provide senior personnel to work with the Plaintiffs or other similarly situated physicians;
 (n) By failing to adequately communicate with the Plaintiffs'(sic) changes to the underlying Agreements;
 (o) By shifting costs of the insurance to the Plaintiff and the similarly situated physician (sic) that are properly the costs of the Defendant.
With regard to these claims of breach of contract, the plaintiffs allege that they have suffered significant financial harm and have been prevented from managing their patients' care appropriately.
In the Second Count of the amended complaint, the plaintiffs allege that the defendant tortiously interfered with their business expectancies with the patients who are insured by the defendant or its predecessor, Blue Cross Blue Shield, in the same ways listed as (a) — (o) above.
In the Third Count, the plaintiffs allege that the defendant breached the implied covenant of good faith and fair dealing in the same respects in which the plaintiffs allege in the First Count that it breached its contracts.
In the Fourth Count, the plaintiffs allege that the same actions alleged to constitute breaches of contract in the First Count are unfair and deceptive trade practices that violate the Connecticut Unfair Trade Practices Act (`CUTPA"), Conn. Gen. Stat. 42-110a et seq.
The plaintiffs seek compensatory and punitive damages and injunctive relief.
At the hearing, plaintiffs' counsel argued that in adjudicating the CT Page 9418 motion for class certification the court could consider claims not actually stated in the amended complaint and consider whether the plaintiffs could represent a class as to those claims as well. The court rejects this assertion. The texts of P.B. §§ 9-7 and 9-8 indicate that class actions may be maintained only as to claims actually articulated in the complaint by the proposed class members.
Standard of Review
Conn. Gen. Stat. § 52-105 provides that one or more parties may assert a claim for the benefit of numerous other parties who are similarly situated.
Practice Book § 9-8 provides that an action "may be maintained as a class action if the prerequisites of Section 9-7 are satisfied and the judicial authority finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The prerequisites of Practice Book § 9-7 are that "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."
The Connecticut Supreme Court has ruled that the Connecticut rules for class certification are substantially similar to Rule 23 of the Federal Rules of Civil Procedure and that federal case law construing that rule may be used as an aid to construction of the state provisions. Marr v.WMX Technologies, Inc., 244 Conn. 676, 680-681 (1998). The movant bears the burden of establishing that each requirement of the Practice Book rules is met. Arduini v. Automobile Ins. Co. of Hartford,23 Conn. App. 585, 589 (1990).
While the court must analyze the plaintiffs' claims to determine whether the criteria for class certification are met, the determination of class action status is procedural, not substantive, and "whether a class action is proper does not depend on the merits of the litigation."Marr v. WMX Technoloaies, supra, 244 Conn. 680.
Unchallenged Criterion
The defendant does not assert the competence of plaintiffs' counsel to represent a class; however, it does dispute that the claims of the named plaintiffs are sufficiently typical of the claims of the proposed class CT Page 9419 members to qualify the named plaintiffs as adequate representatives of the proposed class.
Commonality/Typicality
The defendant opposes class certification on the ground, among others, that the claims of the named plaintiffs are not typical of the claims of proposed class members, either because the plaintiffs do not individually assert the same claims that they seek to assert on behalf of a class, or because they seek to assert claims that are in conflict with the interests of other members of the class they seek to represent.
It is elementary that in order to represent a class in pursuing a claim, the class representative must actually be making the claim on his own behalf that he seeks to assert also on behalf of a class of similarly situated others. P.B. Sec. 9-7, 9-8; Connecticut Association of HealthCare Fac., Inc. v. Worrell, 199 Conn. 609, 614 (1986); ConnecticutSociety of Architects, Inc. v. Bank Building Equipment Corp. ofAmerica, 151 Conn. 68, 75-76 (1963). A class representative must be part of the class and possess the same interest and injury as the class members. Amchem Products, Inc. v. Windsor, 521 U.S. 591, 625-26,117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); Johnson v. Rodriguez, 110 F.3d 299, cert. denied, 522 U.S. 995 (5th Cir. 1997).
As the Court of Appeals for the Second Circuit has observed, the commonality and typicality criteria for class certifications tend to merge, because both serve as guideposts for determining whether the named plaintiffs' claims and those of class members are so inter-related that the interests of the class will be fairly and adequately protected.Caridad v. Metro-North Commuter R.R., 191 F.3d 283, cert. denied,529 U.S. 1107 (1999).
The defendant has presented the court with Exhibit 404, entered as a full exhibit without objection, which is a summary of the deposition testimony of the named plaintiffs in answer to the question whether each of them had his or its own claim with regard to each of the subsections of the First Count that are set forth above. This court has reviewed the excerpts from the depositions that have been provided in connection with this motion and finds that the defendant's characterizations are not always supported by the cited pages of deposition testimony. In some instances, the defendant has equated a deponent's lack of personal knowledge of evidence in support of a claim with a denial that the plaintiff is making a claim. Some of the claims, such as the claim of profiling, are unlikely to have been the matter of outright announcement to physicians. A plaintiff does not, of course, have to be the witness who proves all the facts that support his or her claim. The court has CT Page 9420 therefore inspected the cited deposition testimony to determine, among other things, whether a particular plaintiff in fact asserts that he or his group is not making a claim, or only that the names and dates or other facts on which a claim is based were not in the deponent's memory at the time of the deposition.
Since the same allegations form the basis for the claims in the other counts, the analysis with regard to satisfaction of the requirements of typicality and commonality is the same with regard to all counts. The defendant correctly points out that in some instances, the plaintiffs cannot be found to assert a claim typical of the claims of a proposed class because the plaintiffs themselves do not assert the claim on their own behalf.
With regard to the allegations of paragraph 20(c) (inadequate communication of policies); (i) (inadequacy of appeal procedures); (1) (arbitrary amendment of agreements); and (o) (cost shifting), each of the plaintiffs testified that they had not experienced the conduct alleged or were not making these claims on their own behalf. None of the named plaintiffs alleges that his or its contract was ever terminated as a result of the use of profiling in assessing physicians' utilization to determine those whose charges or utilizations were outside the statistical norm, nor do they take the position that any particular service was not paid for because of the effect of such profiling(j). With regard to the other subsections of the claims, one or more of the named plaintiffs confirmed that he or it was making the claim on his or its own behalf. In those instance in which the named plaintiffs have admitted that they do not make the claims listed above on their own behalf, they are in the position of seeking to assert the claims of others without sharing an interest in those claims. Parties without a claim can hardly be declared "similarly situated" to proposed class members who are assumed to have such claims. The class action mechanism is not designed to allow parties to volunteer to assert claims of others that they do not make on their own behalf. With regard to the claims listed in this paragraph, the plaintiffs have failed to satisfy the requirement, set forth in Practice Book Sec. 9-7(3), of asserting claims that are typical of the claims of the class. The plaintiffs instead propose that the procedural device of class certification be expanded to allow parties to assert claims of others.
The plaintiffs' lack of a personal claim leads to consideration of their adequacy as representatives of a class. A party who will suffer no personal advantage or disadvantage from the outcome of a claim is not a suitable representative for class members with something at stake. AmchemProducts, Inc. v. Windsor, supra, 521 U.S. 625-26; Connecticut Associationof Health Care Facility v. Worrell, supra, 199 Conn. 614; ConnecticutCT Page 9421Society of Architects, Inc. v. Bank Building Equipment Corporation, supra, 151 Conn. 75-76.
As to allegations that at least one of the named plaintiffs actually makes on its own behalf, the defendant asserts that such individual claims are discrete and idiosyncratic, not typical of the claims of others.
As to the claim of failure to make timely and adequate payment (para. 20(a) of the Amended Complaint) plaintiff Zeppieri stated that his claim related only to charges claimed to be unpaid in 1994; Connecticut Family Orthopedics, with which plaintiffs Gray and Ripps are affiliated, stated that they had "isolated claims," and none of the other named plaintiffs makes a claim under this allegation. As to the claim of arbitrary denial of payment (Para. 20(e)), Connecticut Family Orthopedics alleges denial of payment for one item, that is "durable medical equipment;" and Orthopedic Surgery, P.C., with which Kristaps Keggi and John Keggi are affiliated, alleged denial of payment for "conscious sedation procedures." There is no indication that other members of the proposed class make the same claim. A claim that a particular payment was denied, delayed, or underpaid to a particular doctor is not typical of other doctors' claims that completely unrelated claims were delayed, denied or underpaid The facts of each instance will be discrete and particular to the medical ailment and course of treatment of the particular patient in each disputed incident, with no common elements other than the fact that the parties disagreed about the charge.
The contracts on which the plaintiffs' claims are based provide that payment will be made only for medically necessary treatments. With regard to the claim of inconsistency in standards of assessing medical necessity (Para. 20(f)), several of the plaintiffs identified specific procedures as giving rise to claims. Those procedures were those applied to carpal tunnel operations, treatment of tendinitis, knee replacement, hospital stay, discharge, and radiology. This court does not find persuasive the plaintiffs' assertion that determinations concerning medical necessity arising in orthopedic practices are typical of such determinations in other subspecialty practices. The factual issues that relate to the determination whether a particular procedure was medically necessary with regard to a particular patient are by no means the same as to some different procedure for some different patient. Adjudication of this claim would involve scrutiny of the grounds for denial of individual claims on a case-by-case basis, with no reason to suppose that any one determination is typical of such determinations across the board. Class adjudication is ill-suited to adjudication of such claims. AmchemProducts, Inc. v. Windsor, supra, 521 U.S. 591, 624; Brossard v. MeinekeDiscount Muffler Shops, Inc. 155 F.3d 331 (4th Cir. 1998); Pecere v.CT Page 9422Empire Blue Cross Blue Shield, 194 F.R.D. 66, 72 (E.D.N.Y. 2000).
Typicality and commonality are also absent with regard to the claim of inadequate communication, made at paragraphs 20(c) and (n). Several of the named plaintiffs testified that they had not experienced this problem at all. (Exhibit 104, p. 4.) Since it cannot be supposed that the defendant's communications with all contracting physicians and group practices is identical, the issue of adequacy of communication presents factual issues that can be expected to be highly individualized across the proposed class. The requirements of typicality and commonality are not satisfied with regard to this claim.
In their brief, the plaintiffs assert that the requirements of typicality and commonality are met with regard to "the plaintiffs' claim that the use and implementation of the Resource-Based Relative Value Scale (RBRVS) violates the contract provisions of both the BC/BS and Anthem contracts, the covenant of good faith and fair dealing, CUTPA and tortiously interferes with the plaintiffs' patient relationships." (Plaintiffs' Brief, p. 8.) The plaintiffs explain that RBRVS is a system of calculating the fee to be paid for services rendered to patients backed on conversion factors to calculate the amount of work required to perform the particular service. They state in their brief that in 1997 Anthem changed its fees to amounts based on this system of calculation.
The plaintiffs have not, however, alleged in any part of their amended complaint a claim based on changes in the method of calculating the amount to be paid for each service pursuant to the RBVS system. The amended complaint is devoid of any reference to this change in fee structure or to RBRVS, either by name or by any general description. A class cannot be certified as to a claim not made in the complaint.
If the plaintiffs' point in mentioning the change to the RBRVS system for pricing services is to show that the defendant pursued the same conduct toward all physicians who contracted with it, they are in the position of asserting that a common policy that is not at issue in the complaint should be used to prove commonality as to entirely different claims. It does not seem to this court to be reasonable to construe P.B. § 9-7 to allow a class as to one claim so long as there is commonality as to some conduct that is not the basis for a claim. Even if this odd proposition were to be adopted, or if any of the claims were very expansively construed as alleging a cause of action based on the RBRVS, the plaintiffs concede that the RBRVS reassessment of fees diminished the compensation for "procedures", which are frequently performed by orthopedic surgeons, and increased the compensation for time spent on "cognitive services" of the kind provided by other groups of physicians. Some members of the proposed class, namely, those whose CT Page 9423 practices involve fewer procedures and more cognitive services, will have benefitted from the RBRVS fee structure. The plaintiffs, who apparently allege that they were disadvantaged by it, do not have common cause with physicians who were benefitted. A class should not be certified where the proposed members are likely to have divergent goals or view points in the suit. Marisol A. v. Guiliani, 126 F.3d 372 (2d Cir. 1997); In re JointEastern and Southern Dist. Asbestos Litigation, 78 F.3d 764 (2d Cir. 1996); Am/Comm Systems, Inc. v. American Tel. Tel. Co.,101 F.R.D. 317, 321 (E.D. Pa. 1984).
In summary, the plaintiffs fail to satisfy the requirements of commonality and typicality as to the following subsections of the various counts, as to which either 1) they do not make on their own behalf the claim they seek to pursue for a class, or 2) the nature of the claim relates to discrete transactions concerning particular services in particular circumstances, with factual issues not common to other such transactions: Paragraphs (a)(c)(d)(e)(f)(g)(i)(j)(l)(n)(o)(p).
"General Practices" Claims
In addition to the claims of delayed or denied payment and the other issues that this court has found above would require proof of the facts of individual idiosyncratic claims on a case-by-case basis, the plaintiffs make some claims concerning alleged general practices and policies of the defendant in the manner in which it generally conducts itself toward contracting physicians. These allegations are set forth in the claims at subparagraphs (b) (use of incentive bonuses to staff members to influence utilization decisions); (g) (failure to maintain adequate books and records); (m) (failure to provide senior personnel to work with physicians). A court may certify a class with respect to particular issues even if not all of the issues raised by the named plaintiff satisfy the requirements for pursuit in a class action. Central Wesleyan College v.W.R. Grace Co., 6 F.3d 177, 185 (4th Cir. 1993); Black v.Rhone-Poulenc, Inc., 173 F.R.D. 156 (S.D.W. VA 1996). The defendant's opposition to class certification as to these claims consists of observations to the effect that the plaintiffs will not prevail on the merits and that none of the named plaintiffs has experienced contract termination because of any of these practices. (Defendant's brief, pp. 25-26). The Connecticut Supreme Court has explicitly ruled that in determining whether the criteria for class certification are met, a trial court is not to engage in an analysis of the merits or likelihood of success on the claims that the class representatives allege. Marr v. WMXTechnologies, Inc., supra, 244 Conn. 676, 680.
The plaintiffs allege that the policies challenged in subparagraphs (b), (g) and (in) constitute a uniform method of doing business with all CT Page 9424 contracting physicians that is contrary to the express and implied obligations assumed by the defendant in its contracts with physicians and in violation of the Connecticut Unfair Trade Practices Act. The defendant does not contend that it applies profiling only to some groups of physicians and not to others, such that only some physicians are subject to having their utilization reviewed and their affiliation put at risk by this practice. The defendant does not contend that it provides different levels of staffing for discussion of authorizations of care or other issues with regard to some specialties than it does to others, nor does it assert that use of financial incentives to motivate employees engaged in utilization decisions is restricted to some discrete group of contracting physicians, rather than as a general method of operation.
All of the named plaintiffs have alleged that they have contracted with the defendant, and they seek to represent a class of physicians who are similarly situated in that they are subject to the same contested methods of operation that are at issue in these three subsections of the plaintiffs' claims. The court finds that the requirements of commonality and typicality are satisfied with regard to the claims at subparagraphs (b), (g) and (in) of each of the four counts of the complaint.
Numerosity
The plaintiffs have presented evidence to the effect that thousands of physicians in Connecticut have entered into contracts that subject them to the same administrative policies and practices as the named plaintiffs. While the defendant observes that other such physicians pursue a wide variety of kinds of practices that involve different treatments and procedures than those provided to patients by the plaintiffs, all of whom are orthopedic surgeons, none of the exhibits submitted suggests that the defendant treats various groups of physicians differently with regard to the policies and practices at issue in subparagraphs (b)' (g) or (in). Karen Clarke, an employee of the defendant until 1997, testified at a deposition that standard contracts were used for all physicians who were eligible to join. (Transcript appended as exhibit to reply brief, p. A21.)
The defendant's speculation that many members of the proposed class may not share the plaintiffs' interest in pursuing these claims is not a basis for denying class certification. Class members can make their own decisions whether to opt out when given notice of the claims being pursued. Their decision to participate or opt out is their own choice, not to be limited by the defendant's speculation as to what that decision will be.
The court finds that, with regard to the claims at (b)(g) and (in) of CT Page 9425 each of the counts of the complaint, the plaintiffs have satisfied the requirement of showing that "the class is so numerous that joinder of all members is impracticable."
Superiority Over Other Procedures
Practice Book § 9-8 requires this court to consider, as to claims for which the requirements of P.B. § 9-7 have been found to have been met, whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The factors to be considered in making this determination include the risk that individual claims will not be pursued because of the low dollar amount of damages provable by an individual plaintiff, the burdens on the courts and the parties from multiple actions alleging the same claims, and manageability of the case as a class action. See, e.g. Phillins PetroleumCo. v. Shutts, 472 U.S. 797, 809 (1985); Transamerica Refining Corp. v.Dravo Corp., 130 F.R.D. 70 (S.D.Tex. 1990); Johns v. Rozet,141 F.R.D. 211, 218 (D.D.C. 1992). The class is not so large as to present manageability issues, and the named plaintiffs appear to have sufficient resources to afford notice to the class and organize and present the claims of class members.
This court finds that, with regard to the claims of general administrative practices that are the only claims to meet all the other criteria for class certification, a class action is superior to other possible procedures. Without class certification any relief ordered would govern the defendant's practices only with regard to the named plaintiffs. Other contracting physicians would have to bring their own suits to obtain the same relief that might be afforded the plaintiffs if they are successful on the merits of their claims with regard to the general practices at issue. The monetary effect on a physician's practice may be too small to make an individual lawsuit feasible, a circumstance noted by the United States Supreme Court to be a primary reason for the class action device: "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for an individual to bring a solo action prosecuting his or her rights. A class action solves the problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." Amchem Products, Inc. v. Windsor, supra,521 U.S. 617, quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997).
The Supreme Court has recognized that in assessing the factor of superiority, the merits or difficulties of a class action must be weighed against other remedies that are truly available, and has recognized that where the amount of injury caused by a defendant is of a low dollar CT Page 9426 amount, individual suits may not really be available because they are not economically feasible to pursue. Deposit Guaranty Nat. Bank v. Roper,445 U.S. 326, 100 S.Ct. 1166 (1980). It is not determinative that, if damages are also sought, the damages claimed by various class members may differ. Sterling v. Velsicol Chemical Corp., 855 F.2d 1188 (6th Cir. 1988).
The only potential alternative to class action adjudication of the three claims at issue is the maintenance of individual suits by each physician subjected to the policies at issue. Pursuit of these claims in a class action will avoid duplicative lawsuits, multiple adjudications requiring additional judicial resources and the prospect of inconsistent judicial decisions as to injunctive relief, and greater expense to the defendant from defending multiple suits presenting the same claims.
The court finds that adjudication of the issues raised in subparagraphs (b)(g) and (in) in a class action is superior to adjudication of these issues in multiple individual suits.
CONCLUSION
For the foregoing reasons, the motion for class certification is granted as to the claims made in subparagraphs (b)(g) and (in) of each of the four counts of the amended complaint. The motion is denied as to all other claims.
With regard to these three claims, the class shall consist of those physicians who practice in Connecticut or group practices which are located in Connecticut that were parties to either a Participating Physician Agreement or a Participating Physicians Group Agreement (other than the Greater Waterbury Hospital Network, so-called "risk-sharing arrangements, and preferred provider organizations under the Century 2000 plan or Constitution CHCP) at any time after November 9, 1993.
Beverly J. Hodgson Judge of the Superior Court